In Equity.

## MARY H. WHITMORE

*vs.*

## SYLVESTER B. BROWN AND PEDRICK D. GILLEY.

Hancock.   Opinion October 25, 1906.

*Nuisance.   Equity power to remove same will not be exercised, when.   Erection of structures which may be a nuisance will not be enjoined, when.   Structures which are nuisances not outlaws.   Structures lessening value of other land not subject to abatement.   Wharf cannot be lawfully erected on one's own flats in tide water without license.   Legal rights not infringed because structures are unsightly.   Wharf obstructing navigation on tide water is infringement of public right only.   Owner of land on tide waters may have nuisance abated, when.   Colonial Ordinances, 1641-1647 ; R. S., chapter 4, sections 96, 97, 98, 99; chapter 22, sections 5, 13.*

1.  Except in extreme cases, the court will not exercise its equity powers to compel the removal of existing structures alleged to be a nuisance, but will remit the plaintiff to his remedies at law which in this state are " plain, adequate and complete."

2.  Nor will the court intervene with its equity powers to abate a nuisance which the plaintiff has long tolerated, but will require him in such case to establish his claim at law.

3.  Nor will the court enjoin the proposed erection of a structure which may be a nuisance, unless the right threatened by such structure is clear, and the fact clearly established that the proposed structure will infringe such right ; otherwise the plaintiff must first establish his claim at law.

4. The mere fact that structures are, or will be, erected and maintained on one's own land without the license required by statute or ordinance, does not make them outlaws, to be lawfully destroyed by any one, or abated at the private suit of any person.

5. Also the mere fact that structures upon the land of the person maintaining them, lessens the commercial value of other lands, or the enjoyment of them by the owners, does not make such structures subject to abatement by force or by suit.

6. No one can lawfully erect or maintain a wharf upon his own flats upon tide water without a license from the municipal officers of the town as provided in R. S., chapter 4, sections 96 to 99 inclusive, but if so erected and maintained, the wharf cannot be abated except at the suit of the public, or of some private person showing that it infringes some particular right of his own, distinct from his share in the public right.

7. That such a wharf is unsightly and obstructs the view from an adjoining residence lot and thereby reduces the value of the residence, does not infringe any legal right of the owner or tenant of such lot, and does not give him any right to an abatement by suit or otherwise.

8. That the wharf obstructs the navigation, or boating facilities, on the tide water in front of an adjoining residence lot is an infringement of a public right only, and does not give the owner or tenant of such lot a right to an abatement even though the wharf thereby lessens the value of the lot.

9. Where a lot of land borders on tide waters the owner or tenant has the right of access to, and departure from, the lot by water, and such right is a private right peculiar to such owner or tenant distinct from the public right of navigation, and if the unlicensed wharf obstructs such right of access and departure, it is to that extent a nuisance which can be abated at the suit of such owner or tenant.

10. In this case no infringement of any private legal right of the plaintiff by the unlicensed wharf is shown, except possibly the right of access to, and departure from, her land by water. The infringement of that right, however, is not so clearly established as to authorize the court to issue an injunction even against a proposed extension of the wharf. Hence the plaintiff must be remitted to the usual legal remedies.

See *Whitmore* v. *Brown*, 100 Maine, 410.

In equity. On appeal by plaintiff. Bill dismissed.

Bill in equity alleging that a certain wharf and buildings thereon encroach upon the plaintiff's premises, that said wharf is a nuisance, &c., and praying that the defendants be perpetually enjoined from maintaining so much of said wharf and buildings as encroach upon the plaintiff's premises, that so much of said wharf and buildings as encroach upon the plaintiff's premises be declared a nuisance, and

that the defendants be perpetually restrained from enlarging said wharf and buildings, etc.

The plaintiff's bill, omitting the formal parts, is as follows:

"Mary H. Whitmore of Mt. Desert, in said county and state, complains against Sylvester B. Brown and Pedrick D. Gilley, both of Mt. Desert, and says:

"1.   That subject to the rights of the public in and to the highway crossing the premises hereinafter described, and subject to a grant to William W. Vaughan under date of January 1, A. D. 1903, of the right to have the flats of your petitioner at Northeast Harbor, Maine, clear of any structure for three years from the date thereof, your petitioner is seized and possessed of certain real estate at said Northeast Harbor, in said town of Mt. Desert, particularly described as follows, to wit:

"Bounded northerly by land of Manchester heirs, westerly by Somes Sound; southerly by land of heirs of Nathan Smallidge and land of Helen Smallidge, Avelia Holmes and Annie E. Lindsay, and easterly by Gilpatrick's Cove, all as will more fully appear from original instruments of transfer or office copies thereof to be produced in court.

"2.   That the said respondents are maintaining a wharf and buildings thereon upon the shore or flats in the tide waters at the head of said Gilpatrick's Cove, which said wharf and buildings, as your complainant is informed and believes and therefore alleges, are wholly or in part situated upon the premises hereinabove in paragraph one of this bill described.

"3.   That on February 14, A. D. 1903, a hearing was held by the selectmen of said town of Mt. Desert, in the building upon said wharf, upon petition by the said respondents under (then) section 60 of chapter 3 of the Revised Statutes of said state of Maine, for permission to extend and enlarge said wharf, which application and petition was by said selectmen then and there refused and denied.

"4.   That on March 24, A. D. 1903, a second hearing was held by said selectmen of said town of Mt. Desert, in the said building upon said wharf, upon another petition by the said respondents, under said section 60 of chapter 3 of the Revised Statutes of said

State of Maine, for permission to extend and enlarge said wharf, which application and petition was then and there not granted by said selectmen, but leave to withdraw said petition without prejudice was by said selectmen to said respondents granted.

"5. That your complainant is informed and believes and therefore alleges, that the said respondents are illegally and without proper authority, maintaining said wharf and buildings, as above set forth, in said tide waters of said Gilpatrick's Cove, in that no license or permission to erect or maintain any wharf in the tide waters of said Gilpatrick's Cove has at any time ever been granted by the municipal officers of said town of Mt. Desert, as required by the provisions of said section 60 (now section 96) of chapter 4 of said Revised Statutes, or by other proper authority, and that said wharf and buildings, as at present maintained, obstruct or impede, without legal authority, the passage of the harbor or collection of water known as Gilpatrick's Cove aforesaid, and therefore constitute a public nuisance under the provisions of section 5 of chapter 22 of said Revised Statutes.

"6. That your complainant is informed and believes and therefore alleges, that notwithstanding the said illegal existence of said wharf and buildings, and notwithstanding the said refusal of the municipal officers of said town of Mt. Desert to grant permission to said respondents to enlarge or extend said wharf, the respondents illegally and without authority, threaten to construct, and are about to construct, erect, build, maintain and extend the said wharf into said tide waters of said Gilpatrick's Cove.

"7. That the said wharf and buildings, as at present constructed and maintained, are not only an encroachment physically upon the property of your complainant as herein above particularly set forth in paragraph two, and a public and common nuisance as hereinabove set forth in paragraph five but also especially infringe otherwise upon the private rights of your complainant in that the said wharf and buildings in their entirety injure and depreciate the market value for purposes of sale or rent of said real property of your complainant so situated upon said western shore of said Gilpatrick's Cove, and in the immediate vicinity of said wharf, and destroy and

materially injure many rights and privileges of your said complainant to which she is lawfully entitled in connection with the use and ownership of her said real estate, and are in fact an actual nuisance to your complainant, depriving her of her property for private uses, and without compensation.

"8.   That any extension or enlargement of said wharf will add to and increase the injuries to your complainant as above recited.

"9.   That your complainant is informed and believes and therefore alleges, that she has no plain, complete and adequate remedy at law.

"Wherefore your complainant prays:

"1.   That the said respondents, their servants, agents and employes, be perpetually enjoined and restrained by writ of injunction from maintaining so much of said wharf and buildings as stand or encroach upon the premises of said complainant as described in paragraph one of this bill, and that such portion of said wharf and buildings be declared a nuisance to your complainant, and that said respondents be ordered and required to remove the same forthwith, and that any orders, decrees and necessary processes issue from this court to secure the abatement of the same.

"2.   That the said respondents, their servants, agents and employes, be perpetually enjoined and restrained by writ of injunction from extending or enlarging said wharf or buildings.

"3.   That upon hearing, said respondents, their servants, agents and employes may be temporarily enjoined pending these proceedings, from constructing, erecting, building or maintaining any extension of said buildings or wharf into said tide waters of said Gilpatrick's Cove.

"4.   That subpœna in the usual form may issue to said respondents, commanding them to appear and answer this bill of complaint, as provided by law, but not under oath, answer under oath being hereby expressly waived.

"5.   And for such other and further relief as the nature of this case may require, and to this Honorable Court may seem fit and proper."

The defendant's answer, omitting formal parts, is as follows:

"The answer of Sylvester B. Brown and Pedrick D. Gilley, who say:

"1.  That they have not information in regard to the allegations contained in the first paragraph of the plaintiff's bill. They therefore deny the allegations of said first paragraph.

"2.  They admit that they are maintaining a wharf and building thereon at the head of Gilpatrick's Cove, so called, which said wharf with the building thereon, is partly above and partly below the line of high water mark in said Cove, and which said wharf is constructed entirely upon the land and shore owned by and belonging to them the defendants. They deny all other allegations in the second paragraph of said plaintiff's bill.

"3.  They deny the allegations contained in paragraphs three, four and five of the plaintiff's bill.

"4.  They admit that in the fall of 1903 they were preparing to and intended to enlarge their said wharf by building a portion on to the easterly side thereof, but they deny all the other allegations contained in paragraph six of said bill.

"5.  They deny all the allegations contained in paragraph seven of said bill.

"6.  They deny the allegations contained in paragraph eight of said plaintiff's bill.

"7.  They deny the allegations contained in paragraph nine of said plaintiff's bill.

"8.  Further answering the said defendants say that they are and have been for several years the owners of a small tract of land at the head of Gilpatrick's Cove, conveyed to them by Arthur Gilpatrick by his warranty deed dated February 1, 1902, and recorded in Vol. 378, page 332 of the Registry of Deeds for Hancock county, Maine, described in said deed as follows:

"A certain lot or parcel of land situated at North East Harbor in said Mount Desert bounded and described as follows, to wit:

"Beginning at a stone post set in the top of the bank at the Gilpatrick's Cove, so called, on the south side of the town road and in the eastern line of land conveyed to said grantor by Samuel N. Gilpatrick, (here follows the technical description of the prem-

ises,) containing one and twenty-one hundredths (1.21) acres more
or less, exclusive of ways.    Together with the building and wharf
located thereon.

"That said wharf with the building thereon, mentioned in the
plaintiff's bill, is the same wharf and building thereon so conveyed
to the defendants in said deed from Arthur Gilpatrick, that said
wharf is entirely constructed upon the land described in said deed;
that said wharf extends over the line of high water mark of said
Gilpatrick's Cove in a southerly direction about two hundred feet,
and is about forty feet in width; that the distance from the outer
end or head of said wharf to mean low water mark is about six
hundred feet; that the highway road passes by and adjoins the
northerly end of said wharf and building; that the building on said
wharf covers only a portion of it and contains two stores, one of
which is occupied by one of the defendants as a stove store, and the
other is occupied by one of the defendants for a grocery store with
furniture, hardware, etc.; that said wharf and building thereon do
not in fact impede or obstruct the passage of the waters of said
Gilpatrick's Cove, being situated at the extreme northern point of
said Cove, and more than five hundred feet above low water mark
and at that point where the waters of said Cove are not, and have
never been used for purposes of navigation, and could not practi-
cally be so used.

"And the defendants further say that in the fall of 1903, they
did intend and undertake to construct upon the easterly side of
said wharf a small addition thereto which was to be entirely upon
their own shore and flats, and within the boundaries of their said
deed, and which said addition was not to extend southerly beyond
the outer end of said wharf as it has existed for many years past,
and that they had, being the owners of the said land and shore, a
perfect right 'so to enlarge their said wharf as contemplated, which
said contemplated extension is that complained of in the said plain-
tiff's bill.

"Wherefore, the defendants pray that they may be hence dis-
missed with their reasonable costs in this behalf most wrongfully
sustained."

To this answer the plaintiff filed the usual replication. The cause then came on to be heard before the Justice of the first instance upon bill, answer, replication and proof, and after hearing and argument, such Justice ordered, adjudged and decreed that the bill be dismissed with costs. Thereupon the plaintiff, in accordance with the provisions of section 22 of chapter 79, R. S., appealed to the Law Court.

All the material facts appear in the opinion.

*Hale & Hamlin,* for plaintiff.

*Arno W. King and John A. Peters,* for defendants.

SITTING: EMERY, WHITEHOUSE, SAVAGE, POWERS, PEA-
BODY, SPEAR, JJ.

EMERY, J. From the bill, answer and evidence we find the following facts: On the south side of Mt. Desert Island is a small cove of tide water called "Gilpatrick's Cove." The defendants have a warranty deed of a lot of upland on this cove at its head or extreme northern end, and also of so much of the shore or flats of the cove as is included within the extension of the side lines of their upland across the shore or flats so as to include the structures hereinafter described. The plaintiff owns a lot of upland bordering on the cove next south-west of the defendants' upland, but, so far as appears in this case, she does not own any part of the shore or flats of the cove. (100 Maine, 410.) The defendants, being in possession under a warranty deed, must therefore be held to have a prima facie title to the flats named in their deed, at least as against the plaintiff. The defendants' grantor some twelve years ago erected on the land included in his deed to them a wharf extending from the upland out upon their flats in front, and also erected upon this wharf a building for trading purposes. This wharf and building have been maintained ever since, and are now maintained by these defendants and are wholly upon their land. They are now proposing to widen the wharf by an addition to its eastern side within the side lines of their flats and not extending any further out from the upland. The present wharf was erected and has ever since been maintained without

the license required therefor by the statute, R. S., ch. 4, secs. 96 to 99 inclusive, and no such license has been obtained for the proposed extension. The statute prohibits the erection and maintenance of an unlicensed wharf. The plaintiff by her bill asks the court to enjoin the proposed extension of the wharf and also the further maintenance of the present structures on the flats upon the ground that being forbidden by the statute they are a nuisance in law, and injure the plaintiff "in her comfort, property and the enjoyment of her estate," (R. S., ch. 22, sec. 13) her land being used and valuable as a summer residence.

If the existing structures alone were the subject matter of this suit, the bill would need be dismissed under the settled doctrine of this court that it will not, except in extreme cases, exercise its equity powers to compel the removal of existing structures upon the land of the defendant though they may be a nuisance in law, but will leave the plaintiff to his remedy at law which in this state is "plain, adequate and complete." See the statute on nuisances, R. S., c. 22 ; *Davis* v. *Weymouth*, 80 Maine, 310 ; *Tracy* v. *LeBlanc*, 89 Maine, 304 ; *Sterling* v. *Littlefield*, 97 Maine, 479. In *Prop. Maine Wharf* v. *Custom House Wharf*, 85 Maine, 175, the structure was not on the defendant's land and the rights had been settled at law. No such hurt or danger of hurt is shown by the evidence in this case as would take it out of that rule.

The bill would also need be dismissed under the general principle of equity jurisprudence that an equity court will not intervene where the plaintiff has long tolerated the alleged nuisance, but will leave him to establish his claim at law. These present structures had been tolerated for ten years, during all which time they were as much nuisance as now, having the same effect on persons and property at Gilpatrick's Cove. The danger of future hurt from them is no more imminent now than at first. After ten years the claim of the plaintiff for their removal is much too stale for the court to enforce by decrees in equity.

But the claim of the plaintiff for an injunction against the proposed extension is cognizable in equity and hence requires consideration in this suit; and the already extensive and increasing occu-

pation of lands bordering on the tide waters of the Maine coast for summer residences by citizens of this and other states and countries justifies, we think, a somewhat elaborate exposition of the law governing cases like this. The wharf extension, if erected, will, so far as appears, be wholly on flats owned by the defendants. Under our law, based on the Colonial Ordinance of 1641-1647, their ownership of their flats is as full and complete as their owner-ship of their upland, except that it is subject to some extent to certain public rights. *State* v. *Wilson*, 42 Maine, 9 ; *Moore* v. *Griffin*, 22 Maine, 350 ; *King* v. *Young*, 76 Maine, 76. In this case, however, we have to do only with the public right of naviga-tion since no complaint is made of infringement of any other public right. Prior to the statute cited (R. S., ch. 4, secs. 96 to 99, inclu-sive,) the owner of flats could erect wharves on them as freely as upon his upland, provided he did not thereby actually interrupt or impede navigation. *Com.* v. *Charlestown*, 1 Pick. 180 ; *Com.* v. *Alger*, 7 Cush. 53 ; *Low* v. *Knowlton*, 26 Maine, 128 ; *State* v. *Wilson*, 42 Maine, 9. Whether a wharf did actually obstruct or impede navigation and thereby become a nuisance at common law or under R. S., ch. 22, sec. 5, was a question of fact, and sometimes a difficult one, to be determined in each case upon the evidence in that case. The legislature has now intervened and created a tribunal to determine that question, viz: the municipal officers of the town, and has prohibited the erection of wharves in tide waters without a license from that board (R. S., ch. 4, secs. 96 to 99, inclusive). If that license is duly granted, the wharf cannot under the state law be abated as an obstruction to navigation, even if it be such in fact, though, of course, the license will not. protect the wharf from com-plaints for infringement of private rights. If the license is not obtained, the wharf erected without it is an unlawful structure even if it does not in fact obstruct navigation. That the legislature has the power to thus require a license for the erection of wharves on flats is not questioned. *Com.* v. *Alger*, 7 Cush. 53.

Such being the rights of the defendants and of the state in and over their flats, we proceed to consider what right the plaintiff may have to an injunction against the proposed extension of the defendants'

wharf and also to an abatement of the existing structures, assuming for convenience of statement and argument the present suit to be appropriate for that purpose.

The mere fact that the structures are, or will be, erected and maintained without the required statutory license does not make them outlaws, to be lawfully assailed and destroyed by anyone, or abated at the private suit of any person. *Brightman* v. *Bristol*, 65 Maine, 426. Indeed the statute does not declare them to be a nuisance in law. An equity court will not at the suit of a private party restrain the erection of a building, not in fact a nuisance, merely because its erection is forbidden by statute or ordinance. *St. John Village Corp.* v. *McFarlan*, 33 Mich. 72 ; *Mayor of Manchester* v. *Smith*, 64 N. H. 380. Again, the mere fact that the existence of these structures upon the defendants' flats do or will lessen the plaintiff's enjoyment of her lot, even as a summer residence, and lessen its commercial value, does not give her a right to an abatement or even to damages. A neighbor's building on his own land, by its ugliness of architecture or by its mere proximity, may lessen one's enjoyment of his own residence and lessen its market value; or a competing, neighboring factory may lessen one's business profits and the value of his own factory, and yet no legal right be infringed. It is not enough, therefore, for the plaintiff to show that the structures on the defendants' flats are there without the required statutory license and that they lessen the enjoyment and market value of her land. She must go further and show that they infringe some individual right recognized by the law as a legal, private right of hers. That they infringe the legal rights of others gives her no cause of action against them.

The present structures and the proposed extension are forbidden by statute, and to that extent are, and will be, illegal. Do they or will they infringe any individual legal right of the plaintiff? There is no evidence nor complaint that they do or threaten any injury to the plaintiff or her land by vitiating the air or water, by unhealthy or offensive odors, by disturbing noises, or by obstructing the passage of light or air, or by otherwise unfavorably affecting her health or physical comfort. The plaintiff practically advances but three propositions, viz : (1) that the structures are in law and in fact an obstruc-

tion to the navigation of the cove and thereby reduce the value of her land in the cove; (2) that the structures are unsightly and also obstruct the view of the scenery from her land, and thus lessen the enjoyment and value of her estate; and (3) that the structures materially impede the passage by water to and from her land, and thus lessen its value.

As to the first proposition, whatever the damage to the plaintiff or her land, the right infringed, that of the unimpeded navigation of the cove, is a public right common to all the people of the state and not a right peculiar to owners and occupants of land bordering on the cove. It is the settled law of this state that structures which only infringe public rights can be dealt with only by the public, that is, by proceedings in the name of the state or some authorized person in behalf of the public. An individual affected has no separate right of action in his own name. To enforce the public right for his benefit he must set the public agencies in motion. It is only when the structures inflict upon him some special legal injury different in kind as well as degree from that suffered by others that he has an individual right of action against them. *Holmes* v. *Corthell*, 80 Maine, 33; *Penley* v. *Auburn*, 85 Maine, 281; *Taylor* v. *P. .K. & Y. St. Ry. Co.*, 91 Maine, 193.

The plaintiff contends, however, that boating privileges in and about the cove are attached to her lot, that these are a large and peculiar element in its market value and constitute a legal right appurtenant thereto apart from the public which has no right to make use of it to facilitate their use of their public right, and that the structures restrict and abridge these privileges. There may be appurtenant to her lot a right of passage by boats, &c., to and from it, *Maine Wharf* v. *Custom House Wharf*, 85 Maine, 175, but that is only the right of access to and departure from her land by water. Any other use of the water for boating or other navigation would be under the public right alone.

But the plaintiff further urges that, conceding the right violated to be a public right only, the violation of . that public right has damaged the value of her land, and that this damage is individual and peculiar, one not suffered by the public at large. The question,

however, is not whether the plaintiff's land has been damaged, but whether any of her legal rights have been infringed. The land owner has no legal right that the market value of his land shall not be disturbed.

Though by reason of her land being on this cove the plaintiff may have more need or occasion than other persons to make use of the public right to the unimpeded navigation of the cove, and her land may be more damaged by the violation of that right, the right itself is still public and not private. Her ownership of land on the cove gives her no greater nor different right to navigate it. Every other citizen has the same right in kind and degree. The plaintiff may have a greater interest than others in the right and a greater need of its enforcement, but that does not change the public right into a private right. *Frost* v. *Wash. Co. R. R. Co.*, 96 Maine, 76. It may be that an individual actually obstructed by an unauthorized structure while in the actual exercise of the public right may maintain an action for damages resulting, as was held in *Brown* v. *Watson*, 47 Maine, 161 ; but that is a different case from this where the only complaint is of the unfavorable effect upon the enjoyment and value of the land.

The plaintiff further urges the hardship of her being left to the action of public officials to enforce the public right and relieve her from the damage done her by these unlicensed structures. She suggests that the officials, influenced by local, political, or other immaterial considerations, may improperly neglect and even refuse to act upon application and thus leave her helpless. Even if this apprehension be well founded, the court cannot afford relief in this suit. Her remedy against recalcitrant public officers is in some other procedure.

To the second proposition there are two answers. The law of this state does not recognize any legal right to an unobstructed view of scenery over and across the lands, even the flats, of others unless acquired by grant ; nor does the law recognize as a cause of action the annoyance caused by the proximity or ugliness of otherwise harmless structures upon the land of another. The pleasure of an unobstructed view and of a prospect free from unsightly objects may

be great, but in the present state of the law it is too refined for legal cognizance. Again, the annoyances complained of, and the consequent loss in value of land, were not caused by the fact that the structures are or will be erected and maintained without the required statutory license. The plaintiff must prove that her damage was caused by the particular element in the character or use of the structure which renders it a nuisance. *Burbank* v. *Bethel Steam Mill Co.*, 75 Maine, 373, at p. 382. The hurt to the plaintiff must come from the structure, qua nuisance, to give her a cause of action for maintaining it. *Bowden* v. *Lewis*, 13 R. I. 189 a case in many respects similar to this. In the first case the plaintiff's buildings were destroyed by fire communicated from the defendant's steam mill situated on its own land but without the required statutory license therefor. The statute declared any stationary steam engine so erected without the license "to be a common nuisance," and the statute R. S., ch. 22, sec. 13, giving a right of action for injury from a common nuisance, was then in force. It was held, nevertheless, that the absence of the required license did not give the plaintiff a right of action, and that unless the steam mill was a nuisance in fact, its erection and use were not wrongful as to the plaintiff. In the second case the plaintiff was lessee of certain oyster lots from the state, and erected a building on them without the required statutory license therefor. This building somewhat impeded navigation, was unsightly, and also obstructed the view from the defendant's villa lots near by. After the denial of a request for the removal of the building, the defendant himself removed it. In an action of trespass for such removal, it was held that neither the absence of the required license nor the described damage to the defendant's villa lots justified his action. The plaintiff had judgment. In the case at bar had the license been obtained and the structures made lawful, the inconvenience to the plaintiff from the obstruction to navigation, the lessening of her enjoyment of her estate and of its value from the proximity and ugliness of the structures, would have been the same in kind and degree. Hence she was not injured by the lack of the license and cannot maintain this suit on that ground. The two cases cited by the plaintiff, being from other states, are not compelling authority

however closely in point, but we think they are each distinguishable from this case. In *Wheeler* v. *Bradford*, 54 Conn. 244, the plaintiff's residence fronted on a public park. The defendant undertook to enclose a large part of the park for his own use. The court enjoined him at the suit of the plaintiff. The park, however, was not established or reserved simply as a highway for purposes of passage, but to be kept open for air and prospect as well. Residences fronting on this park practically had annexed to them the privilege of air and prospect over the park, a distinct privilege appurtenant, and as such of material value. It was as if A. had granted to B. a privilege of prospect over his land as appurtenant to B's residence, and C. should undertake to obstruct it. In the case at bar the flats are the defendants' private property, subject only to certain public rights. Neither the public, however, nor the plaintiff has any privilege of prospect over them. In *Tyson* v. *First N. Bank*, 133 Ala. 459, (32 So. 144) the plaintiff owned a store on a business street. The defendant owned an adjoining lot on the same side of the street, and proposed to extend its building into the street of which it owned the fee subject to the easement of a public street. The plaintiff alleged that the proposed extension would obstruct not only the view of the street from his store, but also the view of his store from the street. It was held on demurrer that the plaintiff had stated an injury different in kind and degree from that suffered by the public. Granting that the owner of a store on a business street has as appurtenant thereto the right that nothing shall be erected by his neighbor on the street to hide his store from the passing throng upon whose custom his store depends, the case is obviously not the one at bar.

Undoubtedly these structures do annoy the plaintiff and the occupants of her land, and do reduce its renting and selling value, but, so far at least, it appears to be a case of *damnum absque injuria.* It is clear, we think, that her first and second propositions do not, under our law, sustain her suit.

We come now to her third and last proposition, viz: that the structures in fact materially impede the passage by water to and from her land, and thereby infringe a legal right appurtenant to her

land, and distinct from the public right. As to the structures in existence at the time she filed her bill, she must be remitted to her action at law under the rules stated in the early part of this opinion. As to the proposed extension, the evidence does not make it plain to us that it will materially impede passage by water to and from the plaintiff's land. It is by no means so plain a case as that of *Maine Wharf* v. *Custom House Wharf,* supra. The defendant's upland and wharf are at the extreme head of the cove. The plaintiff's land is wholly west of them. The proposed extension is on the east side of the wharf and no farther out toward the sea. Not being fully convinced of the fact alleged, we cannot make it the basis of a decree in equity for a permanent injunction, but must leave the plaintiff to establish it at law. A decree of absolute injunction is too sharp and heavy an instrument to be used unless the right to be protected thereby has been established by a judgment at law or made indisputable in equity.

We find no ground upon which this suit can be maintained in equity, and hence the decree dismissing the bill must be affirmed; but since the plaintiff may possibly be able to establish in an action at law some infringement of her individual legal rights, such as the right of access, the decree of dismissal should be without prejudice to such an action. Since the wharf and the proposed extension are confessedly in violation of the statute requiring a license, we think the defendants should not recover costs of appeal.

> *Final decree to be made in accordance with this opinion.*