[No. 33162.   Department Two.   July 21, 1955.]

E. H. McINNES *et al., Appellants,* v. E. E. KENNELL *et al., Respondents and Cross-appellants.*[1]

[1]Reported in 286 P. (2d) 713.

*Daniel B. Trefethen,* for appellants.

*Chadwick, Chadwick & Mills,* for respondents and cross-appellants.

WEAVER, J.—In 1954, defendant purchased waterfront property, bounded on the north and south by properties owned by plaintiff. A detailed description of defendant's property is necessary to an understanding of the issues.

Defendant purchased:

Tract A: Lots three and four, block twenty-eight, Denny Fuhrman addition to the city of Seattle. Defendant's residence, facing west on 12th avenue north, is located thereon.

This property, and the balance of defendant's property, as it extends to the east, is approximately one hundred feet in width. Immediately to the east of tract A is an alley.

Tract B: Lots three and four, block fourteen, Lake Union Shore Lands, is bounded on the west by the alley identified in tract A, and on the east by Fuhrman avenue.

Tract C: Lots three and four, block thirteen, Lake Union Shore Lands, is located on the east side of Fuhrman avenue.

The state of Washington owns the land between the east line of tract C and the "bulkhead and pier head line" established some distance to the east.

The easterly portion of tract B, Fuhrman avenue, tract C, and the state land are permanently submerged by waters of Lake Union.

A decked bulkhead extends north and south across lots three and four of block fourteen. Piers extend eastward across Fuhrman avenue and lots three and four of block thirteen from the north and south ends of the bulkhead. Within the "U" thus formed, defendant moors the "Gracie S," a two-masted auxiliary schooner ninety-seven feet in length. The schooner is owned by the Gracie S, Inc., a non-profit corporation. Defendant owns in excess of ninety-nine per cent of the stock.

Plaintiff owns lots one and two (adjacent to the defendant's property on the north) and lot five (adjacent to defendant's property on the south) in blocks thirteen and fourteen, Lake Union Shore Lands. The waters of Lake Union also cover a like portion of plaintiff's properties. Plaintiff constructed walkways over the waters covering Fuhrman avenue, his lots, and the lands to the east owned by the state of Washington. He rents space to owners of houseboats which are moored there.

The tempo of this case appears to have been set by a conversation between the parties shortly after defendant purchased his property.

Plaintiff testified that he told defendant:

" 'I have had my eye on this piece of property that you have there for about 15 years.' "

Defendant disclosed that he intended to make rather extensive improvements on his property.

" 'Well,' I says, 'before you start doing any construction work, be sure you go down and get all your permits before you bring in that [pile] driver, because as soon as you bring the driver in,' I says, 'the phone is going to start ringing, and everybody running down to the Building Department, and your trouble is going to start.' "

Plaintiff's advice was prophetic.

Shortly after acquiring his property, defendant commenced a program of rehabilitation, repair, and improvement. With the aid of an architect, he began improvements on his property, especially on the water front.

Defendant repaired and rebuilt the bulkhead across tract B, filled and paved the area thus established, and erected a garage thereon. Defendant extended his north pier onto state land; erected a solid fence along the east side of the alley and eastward along the north and south piers, within eighteen inches of defendant's property line. The existing piers were redecked. Defendant drove a line of fender piling eastward from the end of the south pier, across state land, to the pier-head line.

Plaintiff commenced this action for injunction, both prohibitory and mandatory, alleging that defendant has

". . . maliciously, unjustifiably, unlawfully, unnecessarily and without any benefit to . . ."

himself, erected the fences along his north and south boundaries

". . . intended by defendants maliciously, wantonly, and unlawfully to spite, injure, and annoy plaintiffs and plaintiffs' tenants . . ."

Plaintiff also seeks an injunction prohibiting defendant from mooring the "Gracie S" at his own dock, claiming it is a commercial vessel.

Defendant, by affirmative defense and cross-complaint, claims that plaintiff's houseboats and those of his tenants are illegally occupying Fuhrman avenue, state shore lands, and even navigable waters; that plaintiff is violating the zoning

ordinances and building regulations of the city of Seattle by crowding in houseboats until the premises have taken on the character of a "floating trailer camp," instead of "First Residence Area A," as zoned. Defendant also contends that the houseboat of one of plaintiff's tenants encroaches upon property which defendant is entitled to occupy.

From the issuance of the original temporary restraining order to the end of the trial, every possible issue, factual and legal, was raised by the respective parties. It would be an imposition to detail the conflicting evidence and discuss each separate assignment of error directed to the findings of fact.

The trial court found that defendant had secured the necessary city permits to repair and rebuild the bulkhead, refill to the west thereof, pave the area and the alley adjacent to it, erect a garage thereon, and redeck the existing piers, including the portion spanning Fuhrman avenue; that defendant received permission from the state land commissioner to extend his north pier eastward and to drive the line of fender piling as described.

The court further found:

"That for the fencing defendants made inquiry of the Building Department of the City of Seattle as to the necessity of a permit for the erection thereof and were advised that if it was not with reference to commercial property and the fence did not exceed six feet in height no permit was required, *and acting in good faith upon such assurance* the fencing was completed, save and except the painting of a portion of the outside thereof and installation of permanent electric cable on the South pier and fence before any effective temporary restraining order had been issued with reference thereto." (Italics ours.)

The most significant finding of fact made by the trial court, and the one which plaintiff attacks most strenuously, is as follows:

"That the fences above referred to and erected by defendants . . . *were not erected through any malevolence of purpose or malicious motive or intent on the part of the defendants and are not spite fences.*" (Italics ours.)

The court found that the "Gracie S" is a private yacht and not a commercial vessel; that the extension of the north pier and the line of fender piling extending eastward from defendant's south pier "are reasonable, proper and beneficial improvements" and constitute a protection to plaintiff's property from possible collision with vessels.

On defendant's cross-complaint, the court found that plaintiff is violating zoning and building ordinances of the city, but that such violations

". . . are not such as to warrant the injunctive processes of this court but are matters which this court leaves for enforcement by the public authorities charged with the enforcement of such ordinances."

As we have outlined them, the record amply supports these findings of fact made by the trial court.

At the end of an extended trial, the court entered its decree whereby:

(a) Defendant was mandatorily enjoined to remove as much of the north and south fence as extended east of the westerly line of Fuhrman avenue, within thirty days of the date of the decree or within thirty days from the filing of the remittitur of this court if this portion of the decree should be affirmed.

(b) Plaintiff, his agents, servants, employees, and tenants were enjoined to remove from tract C, and from the state lands to the east thereon, all houseboats encroaching thereon, and "particularly that certain houseboat occupying a moorage rented by plaintiffs and belonging to Allan R. Ostling."

(c) Defendant was granted the continued use, without disturbance of plaintiff, of the piers along his north and south line; the fender piling extending from the south pier across state land to the pier and bulkhead line, with the right to cap them and maintain an electric line thereon; as well as the right to moor the "Gracie S" and its tender, and the vessels of friends and guests, at his pier "in the full and private non-commercial use thereof."

(d) Neither party recovered costs.

From this decree, plaintiff appeals and defendant cross-appeals.

Plaintiff's principal assignments of error relate to (1) the failure of the trial court to order the removal of the extended north pier and the fender piling; (2) the failure of the trial court to prohibit defendant from mooring the "Gracie S" on his property; and (3) the entry of a mandatory injunction ordering the removal of a houseboat encroaching on property to which defendant claims right of occupancy.

■ Running as a thread through all of plaintiff's arguments is the claim that defendant acted maliciously in everything he did. Although the evidence is in sharp conflict, we cannot say that it preponderates against the trial court's finding that the pier and fences "were not erected through any malevolence of purpose or malicious motive or intent on the part of the defendants." Thus, RCW 7.40.030 (Rem. Rev. Stat., § 720), the spite structure statute, has no application and we need not consider it.

■■ We find no merit in plaintiff's contention that the pier and piling must be removed, because they are injurious to him. The record does not support it. To the contrary: The trial court found, and the many excellent photographs which are before us support the finding, that the extended pier and fender piling are a protection to plaintiff's houseboats and those of his tenants.

Injunctive relief will not issue to restrain acts that occasion no injury to the complainant. *Rumbolz v. Public Utility Dist.*, 22 Wn. (2d) 724, 735, 157 P. (2d) 927 (1945). As an alleged public nuisance, plaintiff has not brought himself within the provision of RCW 7.48.210 (Rem. Rev. Stat., § 9921), which provides:

"A private person may maintain a civil action for a public nuisance, if it is specially injurious to himself, but not otherwise."

The "Gracie S," as used by defendant, is a private yacht. It is not a commercial vessel. Plaintiff has failed to prove any damage to his property as a result of its presence on defendant's property, and the trial court properly refused to prohibit its moorage.

Defendant's exhibits Nos. 32 and 34, large photographs taken by a camera pointed east along defendant's north pier,

show conclusively that a portion of a houseboat extends from property which plaintiff controls to property which defendant has the right to occupy under license from the state.

■ We do not agree with plaintiff's contention that he cannot be required to remove this houseboat because defendant is only a licensee of the property upon which a portion of the houseboat is located. Where, as in this case, the exercise of a license requires exclusive possession of the property, a court may exercise its broad equity power to protect the rights of the licensee. Restatement, Property, § 521.

■ The houseboat is in its present location because plaintiff, for a monthly consideration, gave the houseboat owner the right to moor it. We assume, for the purpose of this opinion, that plaintiff has control within the confines of the property upon which he claims the right to rent moorage. It was not error for the court to order plaintiff to remove those houseboats which encroach on property which defendant has the right to occupy.

In one respect, however, the decree is too broad. It should not have enjoined plaintiff's "agents, servants, employees and tenants" to remove the houseboats. They are not parties to this action. Removal of the houseboats is plaintiff's responsibility as the one in charge of the placement of moorages which he purports to grant to others.

We have examined plaintiff's remaining assignments of error, but we find they are not well taken.

Defendant's principal assignments of error relate to (1) failure of the trial court to order plaintiff to comply with the zoning ordinances of the city in the use of his property; (2) entry of a mandatory injunction ordering the removal of that portion of the fences east of the westerly line of Fuhrman avenue; and (3) denial of costs to either party in the trial court.

■ The trial court found that plaintiff is violating the zoning ordinances and building code of the city of Seattle; but left the enforcement thereof to the proper public authorities. A review of the evidence supporting this finding of fact would serve no useful purpose, for defendant failed

to prove any special injury or damage. The court properly refused injunctive relief to the defendant. *Desimone v. Seattle*, 35 Wn. (2d) 579, 213 P. (2d) 948 (1950).

The trial court found that defendant's purpose in fencing his north and south boundaries was "to assure privacy and contribute to the aesthetic appearance of their property and of the neighborhood"; that defendant completed the fence in good faith, upon the assurance of the city building department that no permit was required if the fence was "not with reference to commercial property and the fence did not exceed six feet in height."

The court further found

"That the fences above referred to and erected by defendants are an improvement to and of beneficial use to the property of defendants reasonably necessary and desirable to the purpose and intent and use to which defendants desire to put their property . . . ."

The photographic exhibits in this case are excellent. There is a large aerial photograph of the entire district and many large photographs of the physical features of everything in dispute. After an examination of these, we have no hesitancy in saying that the evidence does not preponderate against the finding of the trial court that the fences are beneficial to defendant's property and reasonably necessary and desirable to the purpose and intent to which defendant desires to put his property.

Plaintiff alleges that

". . . said fence cuts off not only light, air, and a view of plaintiffs' houseboats, as well as houseboats belonging to plaintiffs' tenants, but also injures the health, welfare, and safety of plaintiffs and their said tenants."

In order to support its conclusion that defendant must remove the fence as it exists east of the west line of Fuhrman avenue, the trial court stated in paragraph XI of its findings of fact:

"That having been so erected without permit [from the city] the fence as it exists East of the West line of Fuhrman Avenue is unlawful and being so unlawful constitutes a nuisance in law of which an adjoining owner has a right to

complain *until such time as such fence shall be erected pursuant to proper permit therefor."* (Italics ours.)

We do not agree that the failure to secure a building permit automatically makes the fence a "nuisance in law," and *ipso facto* requires that it be torn down "until such time as such fence shall be erected pursuant to proper permit therefor." The fact that the fence was erected without a building permit, although the court found that defendant acted in good faith, does not make it an outlaw to be assailed and destroyed by anyone or abated at the private suit of any person. The failure to secure a building permit does not cause damage. *Whitmore v. Brown,* 102 Me. 47, 65 Atl. 516 (1906).

The question narrows down to this: Does the fence infringe upon some individual right of plaintiff?

A mandatory injunction is a harsh remedy, and courts of equity will not resort to it unless the right thereto is clear. Rights of adjoining landowners in the use and enjoyment of their property are relative, but they are also equal. Equity cannot restrict one landowner to confer a benefit on the other. It is only when an unreasonable or unlawful use of land by one property owner infringes upon some right of another in the reasonable use and enjoyment of his land that equity will intervene. *Riblet v. Spokane-Portland Cement Co.,* 41 Wn. (2d) 249, 254, 248 P. (2d) 380 (1952).

The trial court found that the fence is reasonably necessary to the use of defendant's property. We cannot say that it infringes upon the reasonable use and enjoyment of plaintiff's property, for it appears that the specific things of which plaintiff complains are, to a great extent, of his own choosing.

Plaintiff is now mooring a great many more houseboats upon his property than were located there when he purchased it. It is abundantly clear from the evidence, both oral and photographic, that plaintiff is now mooring houseboats immediately along the line between the property of the parties.

Under these circumstances, we do not believe that defendant's reasonable use of his property (as the court found) infringes upon any *reasonable* use and enjoyment of plaintiff's property, which warrants the mandatory injunction issued by the trial court for the removal of the fence. That portion of the decree ordering defendant to remove the fence east of the west line of Fuhrman avenue is reversed.

Except for lack of a building *permit,* the trial court made no finding as to whether defendant's fence violates the Seattle building code in any other respect. Counsel have made engaging arguments, applying the code to fences built upon piers. Just as the trial court correctly left the enforcement of Seattle zoning ordinances to the proper public authorities, as they may apply to plaintiff's property, so do we leave the enforcement of the building code, as it may apply to defendant's fence, to the same authorities.

Defendant, having secured substantial relief in this court, is entitled to his court costs in the trial court and on appeal.

The decree from which the appeal and cross-appeal have been prosecuted should be reversed and modified as set forth in this opinion.

It is so ordered.

HAMLEY, C. J., MALLERY, HILL, and ROSELLINI, JJ., concur.