Virginia N. STILWELL, a Minor, by her next friend and mother, Jacqueline S. Stilwell, Appellant (plaintiff below),

v.

Milton V. NATION, Appellee (Defendant below).

No. 2995.

Supreme Court of Wyoming.

Aug. 8, 1961.

Maxwell E. Osborn, Cheyenne, for appellant.

Lathrop, Lathrop & Tilker, Carleton A. Lathrop, Cheyenne, for appellee.

Before BLUME, C. J., and PARKER, HARNSBERGER and McINTYRE, JJ.

Mr. Justice McINTYRE delivered the opinion of the court.

The plaintiff, a nine-year-old minor, has sued by her mother as next friend to recover for personal injuries sustained when she rode her bicycle into a single strand barbed wire fence on defendant's property. At the close of plaintiff's evidence, counsel for defendant moved for a directed verdict. The motion was granted and the trial judge directed the jury to return a verdict in favor of the defendant. The only question to be resolved on appeal is whether this was reversible error.

The defendant is the owner of a trailer court called Tepe Trailer Village located about two miles south of Cheyenne and about 350 feet west of U.S. Highway 85–87. Said trailer court is a part of an 80-acre tract owned by defendant. The entire tract was originally fenced "tight" according to the defendant. It was not explained in the testimony what happened to the so-called tight fence along the north side of the trailer court, but counsel for the plaintiff states in his brief that it was torn down by the action of bulldozers in constructing the trailer court. In any event, around the first of June in 1959 the defendant caused a single strand barbed wire to be placed along the north edge of the court. It was about four feet high. At the same time, the defendant claims, he put in three or four additional posts for the fence, other posts being already there. The posts were ten or twelve feet apart.

The defendant testified as an adverse witness called by plaintiff. None of his testimony pertaining to the fence was contradicted by other witnesses. As to his reason for the single strand wire, he explained that the neighbor to the north complained about the fence being down and about vehicles crossing through from one property to the other and turning around. To prevent such incidents, he put in the posts and stretched about 200 feet of single strand wire along the north side of his trailer court. As to

the use of only one strand of wire instead of several, he said that he did intend to put more on but did not get around to it.

■ The plaintiff with her parents came to live in the defendant's trailer court during the first part of July, 1959. On August 21, 1959, during daytime, the plaintiff and three girl companions were going on their bicycles to a dairy store located a few hundred feet north of the Tepe Trailer Village. Plaintiff had previously gone to this store by using the trailer court road out to a paved gutter along the west side of the highway and following it over to the dairy store. She claims that this time her father did not want her near the highway. According to the father, she explained that there was a back passage and they went in back of the store. The father said that he then told her she could go if she would promise not to get near the highway.

As related by the plaintiff, the girls were on their bicycles in a row when plaintiff cut across in front of the others and ran into the barbed wire fence between two of the fence posts. Up to that point the girls had been traveling on the trailer court roadway. Plaintiff testified that she did not see the barbed wire strand before she hit it. She had been wearing glasses since she was three years old and her father testified that she had had some difficulty with her eyes. Plaintiff could not recall whether she was wearing her glasses at the time of the accident. Her father testified she had them on when she left the trailer, but he could not recall whether she had them on when she returned after the accident. When plaintiff struck the wire she was cut on the neck beneath her chin. Her parents took her immediately to the hospital where a doctor treated and stitched the wound. She was not left at the hospital. According to both the defendant and the girl's father, the accident was not reported to the defendant nor to his trailer court manager prior to the filing of suit.

Although plaintiff's complaint alleges that the single strand barbed wire was erected over a pathway used by children residing in the Tepe Trailer Village, no attempt was made to offer evidence of such a pathway. Ten days after the accident the girl's mother took a color picture of the fence line to show where plaintiff struck the fence. This picture was in evidence. Weeds, grass and vegetation are pronounced between the two fence posts where plaintiff attempted to pass, also along the fence line in general and on the adjacent property to the north. No pathway is discernible.

We have searched the record carefully in this case to see if any special circumstances were shown which would make the construction or maintenance of a barbed wire fence at this particular place negligence. We find none, unless the fact that children lived in the trailer court and the fence consisted of one strand instead of several would be considered special circumstances; but no precedent or authority has been called to our attention which would justify a holding that the construction or maintenance of a single strand barbed wire fence where children are present is negligence per se. In the absence of some authority or persuasive logic for such a holding, we are not inclined to establish it.

Plaintiff's counsel does argue that a single strand barbed wire fence falls far short of being the equivalent of a "lawful fence" as defined in § 11–532, W.S.1957. He admits in his brief that the violation of this statute would not in itself constitute negligence but suggests that it would constitute negligence when coupled with the fact that the defendant knew there were children among his tenants. There are two reasons why we cannot accept this contention. Such reasons are:

■ 1. While § 11–532 defines a lawful fence, it does not define an unlawful fence. Bearing in mind that our state has always been an open-range state in the sense that the owner of cattle or horses is not required to confine them or to prevent them from straying or wandering upon the uninclosed premises of another, it is clear that the object of § 11–532 was merely to pre-

scribe such a fence as would enable landowners to enforce certain remedies against the owners of trespassing animals and not to prohibit other kinds of fences. See Worthington v. Wade, 82 Tex. 26, 17 S.W. 520. We doubt that defendant could be considered to be in violation of said section as plaintiff's attorney has assumed.

2. The section referred to pertains to fences for livestock and animals and has no application to the circumstances involved in this case. In Sowers v. Corthell, 69 Wyo. 215, 240 P.2d 891, 893, Chief Justice Blume wrote of the same statutory provision: "We are inclined to think that the provision was passed to meet situations in agricultural areas. * * * It hardly seems to be appropriate to apply it to lots in a town or city. We think that the provision has no application in the case at bar."

Although the accident with which we are concerned happened outside the city limits, it was in a nearby business area along a busy highway. The wire in question was placed where it was for the purpose of preventing vehicles from trespassing to and from an adjacent property. There being no applicable statute, the ordinary rules of negligence must be applied. In the case of McInnes v. Kennell, 47 Wash.2d 29, 286 P.2d 713, it was held that mere failure of a landowner to secure a building permit before erecting a fence did not cause any damage per se to the adjoining owner. By the same kind of logic, it can be said that the failure of a trailer court owner to meet specified standards for fencing out animals does not constitute negligence per se in the performance of his duties to his tenants.

We are not to be understood as holding that the construction and mantenance of a single strand barbed wire fence would never be negligent, but the presence of persons—even though some of them be children—is not in itself sufficient to make such action negligence. As we have already pointed out, there is at this time an absence of precedent or authority for such a holding, and plaintiff has failed to show any

other special circumstances which would operate to compel a different result.

With respect to the age of the plaintiff, no reason has been advanced for considering it a determining factor in this particular case. No attractive nuisance is present where there is a hidden danger or where a child of immature years might not appreciate the danger involved. A child old enough to ride a bicycle knows the danger of riding against fences or other objects. Not seeing such an object is a matter not related to age. In the attractive nuisance case of Ramirez v. City of Cheyenne, 34 Wyo. 67, 241 P. 710, 711, 42 A.L.R. 245, cited and relied upon by the appellant, Justice Kimball recognized in his opinion that, "The law requires a child to exercise for his own protection that care that may fairly and reasonably be expected from children of his age."

This court has previously said in Chandler v. Dugan, 70 Wyo. 439, 251 P.2d 580, 587, that a person, under the law, is not permitted to say that he did not see when he could have seen by looking. Also, in Chapman v. Ewing, 46 Wyo. 130, 24 P.2d 687, 688, rehearing denied 25 P.2d 1019, it said that a person is presumed to see that which he could see by looking and will not be permitted to say that he did not see what he must have seen, had he looked. On the basis of such rules appellee claims that plaintiff was clearly guilty of contributory negligence and would thereby be barred from recovery. For the purpose of our decision it is sufficient to confine the question to this: Should the defendant, exercising ordinary care, have anticipated that a child or any other person would be likely to ride, run or walk into the single strand barbed wire fence involved in this case without seeing it, if that person were exercising due diligence and care for his own safety?

We fail to find anything in the case at bar which would charge an ordinarily prudent owner with knowledge of the fact that a person, if exercising due care for his own safety, would be likely to run into the fence

and thereby injure himself. Consequently, the action of the district court should be affirmed.

Affirmed.