FRANKLIN WHARF COMPANY *vs.* CITY OF PORTLAND.

Cumberland.　　Decided April 2, 1877.

*Sewers.*

Under R. S. 1857, c. 16, §§ 2 and 3, as amended by chap. 153 of the public laws of 1860, the municipal officers of the city of Portland had the right to construct the sewer in question with an outfall in the public dock, below low water mark, to be used for collecting rubbish and filth and conducting and depositing them there.

As this right must necessarily be exercised conjointly with the public right of navigation, and the rights of the owners of wharves lawfully erected in such waters, it should be so exercised that such rights shall be no further limited or impaired than is reasonably necessary to accomplish the purpose of the statute which gave it.

That purpose was to enable the city to collect and deposite refuse matter in the public dock where it would ordinarily be so distributed and dissipated by the elements as not to create a nuisance, public or private.

The right of the defendants under the statute is not a right to create a nuisance in the public dock; it is rather to make deposits there temporarily, and not to obstruct navigation permanently.

If such deposits accumulate in such quantities as to obstruct navigation, or cause special and particular damage to the owners of the wharves there, not common to the public, it is the duty of the defendants to cause them to be removed.

If they unreasonably neglect or refuse to do so, they will be guilty of creating a public nuisance, and liable to indictment in the one case, and of creating a private nuisance and liable to an action of tort, at the suit of the wharf owners, in the other.

ON REPORT.

CASE, in tort, for obstructing entrance to plaintiffs' wharf in Portland, by solid deposits of sewage.

The plaintiffs are a corporation established and holding wharf property, in Portland, by virtue of Private Laws of 1850, c. 415, of Private Laws of 1857, c. 98, and of Private Laws of 1871, c. 661.

The plaintiff corporation offered to prove that in 1860 the defendant corporation constructed a sewer through Thames St., and made an outlet for it, into and at the head of the dock on the easterly side of the plaintiffs' wharf; that this dock before the construction of the sewer had been wholly below the line of low water; that the dock was public property, a collection of water open to

the sea, below the line of low water, and from time immemorial had been resorted to by large ships for landing goods at the wharves of the plaintiffs and their grantors, and that the plaintiffs and their grantors had been accustomed to pass and repass over the same.

That the sewer leading into the dock, and the other sewers and drains leading into said sewer, were constructed without traps or cess-pools or other contrivances to catch earth, gravel and other solid matter, coming into the sewers, and prevent the same from being washed into the dock.

That from 1860 down to the present time, the dock in question has been gradually filling up with earth, sand, gravel, mud and filth, brought down in said sewer, and deposited in said dock, until the dock has become so obstructed thereby that the upper portion thereof has become wholly unnavigable and the lower portion unnavigable for vessels of large tonnage, and the plaintiffs have been obliged, in order to use their wharf, to dredge the dock at large expense.

That the plaintiffs have suffered special damage by reason of this deposit of earth, sand, mud and filth, and by the depreciation of the value of their wharf property by reason of the docks being filled up, and by reason of their being obliged to pay out moneys to partially dredge the dock, and by the loss of wharfage and dockage which would have accrued from vessels loading and unloading at plaintiffs' wharf, if the dock had not been so obstructed.

That the defendants have been requested by the plaintiff corporation to remove the sewer deposit in the dock by dredging, before the commencement of this action, but have neglected so to do.

That the construction of said sewer and other sewers leading into the same, with traps, cess-pools and other contrivances to catch and hold the solid matter passing through said sewers and drains, would have effectually prevented a great portion of the fill and deposit complained of, and of the consequent injury to plaintiff corporation.

The city solicitor contended that the foregoing facts, if proved, would not sustain an action against the city of Portland.

Thereupon it was agreed by the parties to report the case to the

law-court for the determination of the following questions of law :

1. Whether the city of Portland have a right to construct a sewer opening into one of the docks of the city, so as to cause a filling up of the same, as above stated, to the injury of the adjoining wharf owners.

2. If so, whether it is not the duty of the city to cause the dock to be dredged and cleared of such deposits, from time to time, as the same shall become an obstruction to navigation.

All ordinances and by-laws of the city of Portland, and all acts of the legislature, bearing upon these questions, are made part of the case. When these questions of law have been determined, the action is to stand for trial.

*C. P. Mattocks & E. W. Fox,* for the plaintiffs, contended that the general authority conferred upon municipal corporations did not authorize them to construct and maintain sewers in such manner as to obstruct the navigation of public navigable waters.

That there was nothing in the acts of the legislature authorizing the construction of sewers by the city of Portland, which grants any peculiar privileges to that city as regards the filling up of the docks, harbor, or public navigable waters surrounding that city, referring to R. S. of 1857, c. 16, §§ 2 and 3, as amended by c. 153, of the public laws of 1860.

That any obstruction of navigable waters is a public nuisance, especially if made below low water mark.

That a public nuisance can be legalized only by legislative enactment, explicit, definite and unequivocal.

That while it is said that the sea is the natural receptacle of the offscourings of the land, and that the filth and refuse of great cities, which must be deposited somewhere, can be deposited in the sea with the least expense and detriment to public health; this argument has little force in view of the fact that sewers may be so constructed that their deposits may be made in the sea without injury to navigation.

That it is the duty of the city either so to construct their sewers that the solid refuse shall never reach the docks, or else to remove it therefrom as soon as it becomes an obstacle to navigation.

That the rule once laid down in *Rex* v. *Russell*, 6 B. & C., 566, "If that which in itself is a public nuisance, as there is no question but what an obstruction to public navigation is, benefits a vastly larger number of people than it incommodes, and in a vastly more important way, then it ceases to be a public nuisance and becomes a public benefit," has been overruled in *Rex* v. *Ward*, 4 Ad. & E., 384, where Lord Denman says, "there is no practical inconvenience in abiding by the opposite principle, for daily experience proves that great and acknowledged public improvement soon leads to a corresponding change in the law, accompanied, however, with the just condition of being compelled to compensate any portion of the public which may suffer for their advantage," and that the law of this country and of this state is that the fact of such obstruction being a benefit to the greater number does not render it any the less a nuisance.

The counsel, in their argument, discussed the following cases. *State* v. *Freeport*, 43 Maine, 198. *Knox* v. *Chaloner*, 42 Maine, 150. *Garey* v. *Ellis*, 1 Cush. 306. *Gerrish* v. *Brown*, 51 Maine, 256. *Sherman* v. *Tobey*, 3 Allen, 7. *Eames* v. *N. E. Worsted Co.*, 11 Met. 570. *Renwick* v. *Morris*, 3 Hill, 621. *Hickok* v. *Hine*, 23 Ohio St. 523. *Proprietors of Locks* v. *Lowell*, 7 Gray, 223. *Pennsylvania* v. *Wheeling & Belmont Bridge*, 13 How. 518. *Gunter* v. *Geary*, 1 Cal. 462. *Pilcher* v. *Hart*, 1 Humph. 524. *Washburn & Moen Man. Co.* v. *Worcester*, 116 Mass. 458. *Boston Rolling Mills* v. *Cambridge*, 117 Mass. 396. *Brayton* v. *Fall River*, 113 Mass. 218. *Child* v. *Boston*, 4 Allen, 41. *Merrifield* v. *Worcester*, 110 Mass. 216.

In their closing summary they said :

I. That the city of Portland have no authority, express or implied, to empty their sewers into the public docks, if by so doing the docks are partially filled with deposit and navigation obstructed. We claim this irrespective of the question whether or not the sewer could be so constructed as to avoid the deposit of matter. If deposit necessarily results in the dock, it is the duty of the city to carry its drain elsewhere.

In this view of the case it follows that the city being a wrongdoer in making the deposit, *a fortiori*, it is their duty to remove it.

II. That even if by any implication absolute authority to enter the docks be conferred upon the city, it is their duty so to exercise the power that no obstruction of the docks shall result, as could be done by the use of suitable traps,—or if such obstruction does necessarily result, then, inasmuch as there is no express authority conferred upon the city to obstruct the docks and it is well known that the obstruction can be removed by dredging, the more reasonable inference is that the city is to be allowed to enjoy the privilege of drainage subject to the burden of repairing the evils it does by dredging.

III. We claim that the sewer in question, though built by the defendant corporation, was never located according to law, and that whatever authority over the docks the city may possess, as regards sewers legally located, they are as regards this particular sewer, wrong-doers in opening it into the dock in question, and consequently liable for all injuries inflicted upon the plaintiff corporation thereby.

*T. B. Reed*, city solicitor, for the defendants.

Unless the legislature had authorized the plaintiffs to construct their wharf where it now is, wholly below low water mark, it would have been itself a nuisance, with no rights which a person of any color would be bound to respect.

I. The question before the court is, whether a wharf corporation, building its wharf by authorization of the legislature out into the public navigable water, has rights which are paramount or subservient to the rights of the inhabitants of the city of Portland. Before any wharves were built below low water mark, no one would doubt or question the right of the city to build drains through their own property into the tide water. Did they lose any of their rights in consequence of the act which incorporated the plaintiff? This is believed to be an entirely new question, and as yet undetermined. It will be noticed that there is an essential difference between this case and the Massachusetts cases, cited by plaintiffs' counsel. In this case, the wharf alleged to be injured is wholly below low water mark. Outside the permission of the legislature they have no rights whatever.

In the Massachusetts cases, the parties complaining had direct proprietary rights in the dock or other navigable stream alleged to have been filled up or injured. This will be seen more clearly by an examination of the cases, commented on by plaintiffs' counsel, *Boston Rolling Mills* v. *Cambridge, Haskell* v. *New Bedford, Brayton* v. *Fall River.*

II. The people of the city of Portland, by the paramount law of necessity, and by the imperative demands of health, are entitled to the right to make sewers and drains, and discharge sewage into the sea, the great natural receptacle for all the drainings of the land, where flow all the waters which wash the surface of the earth, and where of necessity, must flow all the artificial sewage matter which would otherwise poison with its filth the whole population of the city. If no wharves had been built beyond low water mark, the scour produced by the ceaseless ebb and flow of the tide through the harbor, up into the Stroudwater river and back again, would have swept all the deposits into the Casco bay, and left no ground of complaint on the part of that greater public, of which the inhabitants of Portland are a portion. How it is possible to deny a right so important to the health and necessities alike, of the inhabitant and the stranger, is beyond conception. Statement is the only argument needed in its favor. While this right on the part of the city existed and had always existed, the plaintiff corporation was formed, and obtained from the legislature (act of Aug. 29, 1850) the right to extend its wharf into tide water. Unlike the plaintiff's case in *Haskell* v. *New Bedford, (supra,)* no right as to docks is given to the corporation. It takes by the act simply the right to extend its wharf. We claim that when they took the right to extend their wharf, they took it *cum onere,* subject to the right of drainage then existing in the public. By building a solid wharf, they, and those who built the wharf on the other side of the space, now used as a dock, disturbed the natural scour of the tide, and caused the accumulation of sand, if there be any, of which complaint is made. And there is no reason why they should not pay for the dredging which their own erection may have made necessary. But aside from this, we say that the privilege which the legislature granted them was subservient to

the natural right of the people of Portland to drainage into the sea. Plaintiffs ought to clear out the dock if they desire to use it. And why should they not? They have received from the state a privilege of great value for nothing, and as a consequence, they claim that the health and comfort of four or five thousand people shall be subordinated to their right to make a hundred or two dollars more a year. The only right plaintiff corporation has to .the dock in question, is the right of navigation in common with all the world. As between it and the people of Portland there are no equities in the plaintiffs' favor whatever. By R. S. 1857, c. 16, § 3, we had this right confirmed to us. The legislature thereby authorized us to build this sewer which was ordered January 20, 1860, *prior* to the repeal of this section.

III. There is no special damage which entitles plaintiffs to this action. If the accumulation said to exist is a public nuisance, if the right of drainage must give way to the right of navigation, then one public right gives way to another, and the proper method when the public is aggrieved is by indictment. Plaintiffs cannot maintain their action unless their grievance is special and peculiar, different in its nature and kind, and not merely in degree, from the grievance of other persons. *Blood* v. *Nashua & Lowell Railroad*, 2 Gray, 137. *Brightman* v. *Fairhaven,* 7 Gray, 271. The only injury which plaintiffs suffer is precisely what the owner of Galt's wharf next to it suffers; just what the public suffers; for the proprietors of Galt's wharf and the public have the same right in that dock that Franklin Wharf Company have. If the plaintiffs owned any portion of the dock next their wharf, this would be within the case of *Haskell* v. *New Bedford*, and the case of *Brayton* v. *Fall River*. The damage would be peculiar, differing in its nature from that suffered by the public; for they would then have a right to water of a certain height different from the general right of the public. When the plaintiff owns a dock or land in front of his wharf, he has a peculiar property therein, different from the right of navigation, and any obstruction of that right becomes a private nuisance. But if he owns nothing beyond his wharf, all the right he has in the sea is the right of navigation. And that is what the public has. The advantage which plaintiffs

have in having their wharf where it is, arises from the fact that the dock is a public highway, the wharf is at the side of it, and the public can come and go. While it is true that some early English cases, like *Wilkes* v. *Hungerford Market*, 2 Bing. N. C. 281, held an obstructor of a public highway liable at the suit of a shop keeper on the side of the way for diminished business, the latter cases in this country leave public injuries to be redressed by the public. *Smith* v. *Boston*, 7 Cush. 254. *Brainard* v. *Connecticut River Railroad*, 7 Cush. 506. *Blood* v. *Nashua & Lowell Railroad*, 2 Gray, 137. *Harvard College* v. *Stearns*, 15 Gray, 1. The appropriate remedy for a nuisance in a common highway is indictment. *Rowe* v. *Granite Bridge*, 21 Pick. 344. *Weeks* v. *Shirley*, 33 Maine, 271.

To conclude, the defendants contend that inasmuch as the plaintiffs have no exclusive or peculiar proprietary rights in the dock, and received no privilege from the legislature, except to extend their wharf, they received that privilege subject to the existing right of the city to drainage.

That if as between the city and the public any nuisance exists by reason of the outflow from the sewer, the proper remedy is by indictment of the guilty party.

No peculiar right of the plaintiffs is violated by the acts complained of, no injury done them differing in nature and kind from that done the general public.

If these propositions are correct, the two questions of law propounded to the court, so far as this case is concerned, must be answered in favor of the defendants.

DICKERSON, J. Though the case does not show the precise time when the outlet to the sewer in controversy was built, it is reasonable to conclude from the order of the mayor and aldermen passed Jan. 20, 1860, "authorizing the committee on drains, &c., to construct and extend the sewer which has its outlet in Thames street through Thames street to the dock," and the report of that committee to the mayor and aldermen on March 30, 1860, "that they had built a portion of the same" and "recommending that the completion thereof be referred to the next city council," that it was built under the authority of §§ 2 & 3 R. S. of 1857, as

amended by c. 153 of the public laws of 1860, which took effect April 19, 1860. The second section of that statute is as follows: "The municipal officers of a town, and mayor and aldermen of any city, may construct drains or sewers in a substantial manner, through, along or across any public street, highway or town way therein, and over or through any lands of private persons or corporations, when they shall deem it necessary for public convenience or health, at the expense of the town or city, and they shall be under their direction and control."

Under the general authority conferred by this section of the statute upon the municipal officers of towns and cities, to improve the public drainage and sewerage in their respective municipalities, we have no doubt but they had the right to construct a suitable outfall for a sewer in the public dock below low water mark, whenever they deemed it necessary for "public convenience or health." Indeed, without such authority, the section would be a nullity, in many cases not unlikely to occur in the larger cities where the difficulty, inconvenience and expense of providing suitable cess pools for retaining the rubbish and filth that naturally seek an outlet through sewers, would render it next to impossible to supply them. The power of these municipal officers is limited in the statute by the demands of "public convenience or health," which obviously require that the refuse matter and impurities in large cities should be deposited and dissipated in the sea, which is the great receptacle provided by nature for the offscourings of the land. . If the adjudication of the municipal officers of the city of Portland upon the question of "public convenience or health" was open for revision, we see no objections to affirming their decision. But their adjudication is conclusive upon that matter.

When the outlet of the sewer was built, the plaintiff company had extended their wharf into tide waters below low water mark under the authority of a grant from the legislature. Neither party had any right to make any erections there so as to obstruct navigation without legislative authority therefor. With such permission, they respectively had the right to make and maintain erections according to their respective grants and the law in such cases. The act under which the sewer was built is silent as to the

rights, duties and liabilities of the city in respect to the disposition of the deposits that might accumulate at the outlet of the sewer, and the several legislative acts passed for the benefit of the wharf company contain no provisions upon this subject. The questions in dispute between the parties, therefore, are to be determined by a construction of these respective statutes and the rules of law applicable to the facts in the case, it being premised that both parties have rightfully made their respective erections.

The right to build the sewer and outlet implies the right to use them for the purposes for which they were intended, to wit, for the collection and discharge of the debris of that part of the city, where they should be constructed, into the dock below low water mark. But it is to be borne in mind that the right to do this being in contravention of the right of the public, at common law, to use the sea as a public highway, should be construed strictly and made to harmonize, as nearly as may be, with this paramount right of the public; for we do not, by any means, assent to the proposition of the counsel for the defendants that the right of navigation is subordinate to the right of sewerage. No authority has been cited to sustain that position, nor is it reconcilable with the well established doctrine of the common law.

The public right to the navigation of the sea is not qualified or limited, at common law, by any private or municipal right of sewerage. "It is an unquestionable principle of the common law," say the court, in *Arundel* v. *McCullock*, 10 Mass. 70, "that all navigable waters belong to the sovereign or, in other words, to the public, and that no individual or corporation can appropriate them to their own use, or confine or obstruct them so as to impair the passage over them, without authority from the legislative power." So in *Commonwealth* v. *Charlestown*, 1 Pick. 180, Parker, C. J., says: "There can be no doubt that, by the principles of the common law, as well as by the immemorial usage of this government, all navigable waters are public property for the use of all the citizens; and that there must be some act of the sovereign power, direct or derivative, to authorize any interruption of them." The same doctrine has been repeatedly held and applied in this state to tide waters and navigable streams. In

*Gerrish* v. *Brown*, 51 Maine 256, it was held that navigable rivers are public highways, and that if any person obstruct such a river by carting therein waste material, filth or trash, or by depositing material of any description except as connected with the reasonable use of such river as a highway, or by direct authority of law, he does it at his peril, and is guilty of creating a public nuisance.

The statute under which the defendants built the sewer and outlet is not to be construed, therefore, as authorizing an unnecessary infringement of existing rights and privileges; but it is to have such a construction that the wharf company shall be no further limited or restricted in these respects than may be reasonably necessary to accomplish the purpose of the statutes; and it is the duty of the defendants to exercise the power thus conferred in accordance with this rule. *State* v. *Freeport*, 43 Maine, 198, 202. *Newburyport Turnpike* v. *Eastern Railroad*, 23 Pick. 326.

The city have the right to use the sewer, and the wharf company the right of navigation and the use of their wharf. These respective rights are to be reasonably enjoyed. Neither party can destroy, or unreasonably and unnecessarily impair the rights and privileges of the other. The purpose of the defendants' erection under the statute is substantially accomplished by the discharge of the deposits at the outlet of the sewer. It cannot be presumed or implied that the statute contemplated the erection of a public nuisance below low water mark, by allowing the deposits from the outlet of the sewer to accumulate and remain there in such quantities as to menace the public health, obstruct navigation and seriously to impair, if not entirely to destroy, the plaintiffs' erections, previously made under an act of the legislature of equal authority with that under which the defendants made their erection. Nor is it reasonable to conclude that the grant under which the plaintiffs extended their wharf into tide waters, implies the right thereby to create a public or private nuisance either in the manner of using their wharf or by its disuse and allowing it to go to decay.

The purpose of the legislative grant to the wharf company was, not to destroy or obstruct navigation and commerce but to facilitate them. So the purpose of the statute under which the city

acted was not to authorize it to transfer a nuisance from the city to low water mark, or to create one there, but to enable it to conduct the rubbish and impurities from a particular portion of the city to a point in the sea where they would ordinarily be so distributed and dissipated as not to create a nuisance. If, however, this result is not produced either by reason of the action of the elements or from some other cause than the fault of the plaintiffs, it is the duty of the city to remove those deposits within a reasonable time and in such a manner as to prevent their becoming a nuisance to the public or a private nuisance to the wharf company. The right of the defendants to construct an outfall for their sewer in the sea does not include the right to create a nuisance, public or private; it is a right to make deposits temporarily, and not a right to obstruct navigation permanently.

The legal status of the defendants is analogous to that of persons using a public highway, whether upon the land or water, who have a right to the reasonable use thereof, for all legitimate purposes of travel and transportation, though this not unfrequently involves the necessity of a temporary obstruction of the highway. In *Davis* v. *Winslow*, 51 Maine, 264, 297, the court use this language : "Firemen in extinguishing fires, builders in erecting or removing buildings, teamsters in hauling logs or masts to market, truckmen in loading or delivering merchandise, shipmasters and boatmen in receiving, transporting and delivering their cargoes, raftsmen in managing their rafts, river drivers in running logs, and mill owners in securing them, oftentimes, of necessity, require so much of a highway as temporarily to obstruct it ; but, in such cases, they must so conduct themselves as to discommode others as little as is reasonably practicable, and remove the obstruction or impediment within a reasonable time, having regard to the circumstances of the case ; and when they have done this, the law holds them harmless."

The view we have taken of this case corresponds with the recent decisions upon this important subject, as the cases cited by the counsel for the plaintiff abundantly show. *Haskell* v. *New Bedford*, 108 Mass. 208, 214, is directly in point. In that case the court say : "The owner of any lands bordering upon the sea,

may lawfully throw refuse matter into it, provided he does not create a nuisance to others. And there can be no doubt but public bodies and officers, charged by law with the power and duty of constructing and maintaining sewers and drains for the benefit of the public health, have an equal right. But it by no means follows that either the city or any private person has the right to deposit filth upon the sea-shore in such quantities as to create a nuisance to health or navigation. . . . The right conferred upon the city of New Bedford to lay out common sewers through any streets or private lands, does not include the right to create a nuisance, public or private, upon the property of the commonwealth or of an individual, within tide water."

A more recent case in Massachusetts, that of *Brayton* v. *Fall River*, 113 Mass. 218, 230, is substantially a duplicate of the present case in its facts and legal status. The court there held that the plaintiff could maintain an action of tort against the defendants for obstructing his wharf erected upon a tide water creek, with the rubbish from their sewer. "An individual," say the court in that case, "cannot maintain a private action for a public nuisance, by reason of any injury which he suffers in common with the public. The only remedy is by indictment or other public prosecution. But if by reason of a public nuisance, an individual sustains peculiar injury differing in kind, and not merely in degree and extent, from that which the general public sustains from the same cause, he may recover damages in a private suit for such peculiar injury. . . . We are of opinion that this was an injury, special and peculiar to him, for which he may maintain this action. He has a right to the water at his wharf at its natural depth. By the filling up of the dock, his use of his wharf for the purposes for which it had been constructed and actually used, were impaired, and he was subject to an inconvenience and injury which was not common to the public."

We understand that this is precisely what the plaintiffs complain of in this case, the diminution of the depth of water about their wharf by deposits from the defendants' sewer, so as materially to interfere with vessels taking in and discharging cargoes there, as they had been accustomed to do. The report of the case sets

forth that these deposits had accumulated to such depth as to render "the upper portion of the dock wholly unnavigable, and the lower portion unnavigable for vessels of large tonnage, and that the plaintiffs have been obliged in order to use their wharf to dredge the dock at large expense." This would undoubtedly bring the case within *Brayton* v. *Fall River*, unless the alleged obstruction was in some part of the dock, not adjoining the plaintiffs' wharf, and did not diminish the natural depth of the water about their wharf. In that case the injury would be to the public right of navigation which the plaintiffs enjoy in common with the public, and the remedy would be by indictment as the counsel for the defendants contends: their injury, though perhaps differing in degree, would not be special and peculiar to them, but would be the same in kind as that of the public, in which case the private remedy by action would be merged in the public remedy by indictment.

Taking the view of the purport of the report of the case, as before stated, we have come to the conclusion that the defendants under the statute have the right to construct sewers opening into the public docks of the city, and to use them in a reasonable manner for conducting and depositing therein, refuse matter and impurities, but that it is their duty to cause such docks to be cleared of such deposits, whenever they become an obstruction to navigation, or injurious to the public health. If they neglect to do this within a reasonable time, they are guilty of creating a public nuisance and are liable to an indictment; and if such obstruction cause damage to the owners of wharves by diminishing the depth of water about them and thereby impair their use for the purposes for which they were constructed and have been used, causing inconvenience and injury not common to the public, they are guilty of imposing a nuisance upon the wharf-owners, and become liable to an action of tort therefor. If the injury to the wharf owners is merely an injury to the right of navigation in common with the public, the defendants will not be liable in a civil suit. With these qualifications and limitations we answer both of the questions submitted, in the affirmative.    *Action to stand for trial.*

APPLETON, C. J., BARROWS, DANFORTH, VIRGIN and LIBBEY, JJ., concurred.