## In Equity.

### AMERICAN WOOLEN COMPANY *vs.* KENNEBEC WATER DISTRICT.

### Kennebec.    Opinion November 30, 1906.

*Waters and Water courses.  " Great Ponds."  Diversion of waters for public pur-*
*poses.  Compensation.  Condemnation proceedings.  Damages.  Colonial Ordi-*
*nance, 1641-7.  Private and Special Laws, 1899, chapter 200, section 3.*

1.  Lakes and ponds of more than ten acres in extent are known as "great
ponds" and are under the ownership and control of the State for the
benefit of the public.   The State can at its discretion authorize the diver-
sion of their waters for public purposes without providing compensation
to riparian owners upon the ponds or their outlets.   *Auburn* v. *Union
Water Power Co.*, 90 Maine, 516, affirmed to the above extent.

2.  When the legislature has directly granted authority to divert water from
a great pond for public purposes without requiring as a prerequisite any
proceedings for condemnation, or for the ascertainment and payment of
damages, the grantee can begin such diversion at once, and a bill in equity
to restrain such diversion until such proceedings are had cannot be sus-
tained.

In equity.    On report.    Bill dismissed.

Bill in equity praying that the defendant, its servants, agents or
attorneys be enjoined and restrained by temporary and perpetual
injunction from taking its supply of water from China lake in
Kennebec County until certain condemnation proceedings, which the
plaintiff alleges are required by law, shall have been had, and for
such other and further relief as the nature of the case may require.
The gist of the bill is stated in the opinion.    To this bill the defend-
ant filed a general demurrer.

At the hearing before the Justice of the first instance, and by
agreement of the parties, it was ordered that the cause be "reported
to the Law Court to be heard on the bill and demurrer."

The case appears in the opinion.

*Raymond & Gordon and Charles F. Johnson*, for plaintiff.

*Harvey D. Eaton*, for defendant.

Sitting:   Wiswell, `C. J., Emery, Whitehouse, Savage, Peabody, Spear, JJ.

Emery, J.   This is a case in equity reported upon demurrer to the bill.   The material allegations in the bill may be stated concisely as follows:   China Lake in Kennebec County has an area of some six square miles and the outlet of its waters is through Mile Brook into the Sebasticook River.   The defendant corporation, the Kennebec Water District, composed of the territory and people of Waterville and Fairfield Village, had legislative authority by chap. 200 of Private Laws of 1899 to take water from China Lake for the purpose of supplying the inhabitants and municipalities of Waterville, Fairfield Village, Benton and Winslow with pure water for domestic and municipal purposes.   Acting under this authority the Water District has laid a large pipe from China Lake to its pumping station in Waterville with an intake lower than the bed of the natural outlet of the lake, and through this pipe is constantly drawing a large quantity of water from the lake materially lowering its natural level and the natural flow of water through the outlet down Mile Brook. This diversion of water from the lake materially reduces the capacity efficiency and value of a pre-existing mill privilege and mill of the plaintiff on Mile Brook below the outlet.

The Water District was not required by its charter to go through any process of condemnation of the right to take water from China Lake and did not do so.   It simply laid its pipe and diverted the water as under a grant from one having the full right.   By its charter, however, the Water District was made liable for all damages that should "be sustained by any person or corporations in their property by taking of any land whatsoever, or mill privileges within the district or water from Snow Pond, or by flowage, or by excavating through any land for the purpose of laying pipes, building dams or constructing reservoirs.   If any person sustaining damages as aforesaid and said corporation shall not mutually agree upon the sum to be paid therefor, such person may cause his damages to be ascertained in the same manner and under the same conditions, restrictions and limitations as are or may be prescribed in case of damages by the laying out of highways."   Sec. 3 of charter.

The prayer of the bill is that the Water District be enjoined from taking any water from China Lake until it shall have acquired the right to do so by due proceedings for condemnation; hence the question now presented is, not whether the plaintiff is entitled to any compensation for the injury done its property by the Water District's diversion of water from China Lake, but is whether the water district could lawfully begin and continue such diversion for the purposes named in its charter without first going through some process of condemnation to acquire the right. If it could, then of course the plaintiff must be remitted to its claim for compensation and must assert that claim by some other process than a bill in equity.

China Lake is a "great pond" being of more than ten acres in extent, and hence with its waters is public property owned and controlled by the State for the benefit of the public. The Colonial Ordinance of 1641-7, reserving to the government full ownership and sovereignty over great ponds, was extended to the territory of Maine with the same force as in Massachusetts. The extent of that ownership and sovereignty came before the court in Massachusetts in the case *Watuppa Reservoir Co.* v. *Fall River*, 147 Mass. 548. The question there presented was whether the legislature could lawfully and effectually grant to the City of Fall River the right to take water from North Watuppa Pond,—a "great pond," for domestic and public uses without providing for compensation to be made for damage caused thereby to mills and mill privileges on the outlet stream below the pond. In an elaborate opinion it was held in effect that under the Colonial Ordinance, except as to grants made prior to the ordinance, the State had full propriety in, and sovereignty over, the waters of great ponds, and could at discretion divert the waters and authorize their diversion for public uses without providing compensation to riparian owners injured thereby; that riparian lands on a river or stream flowing out of a great pond are subject to this right of the State to authorize a diversion of the water of the pond for public purposes and must bear without compensation any damage caused by the exercise of that right by the State unless the State shall choose to make compensation; that where the State, in granting authority to divert the water, has not required compensation to be

made to riparian owners for damages sustained, none need be made. True, three Justices dissented but the concurring Justices were Morton, Chief Justice and sometime Governor of the Commonwealth, Field, afterward Chief Justice, Devens at one time U. S. Attorney General, and Holmes, now a Justice of the U. S. Supreme Court; a notable array of eminent jurists.   Their opinion has never been over-ruled.   In *Auburn* v. *Union Water Power Co.*, 90 Maine, 576, the same doctrine in all its extent was without dissent declared to be the law of this State.   The grounds of the doctrine are fully and convincingly stated in the cases cited and there is no need to iterate them here.   Indeed, the plaintiff's counsel do not now question the authority of the Massachusetts case.   They only contend that this court in the Auburn case cited (90 Maine, 576) erroneously went beyond the Massachusetts case and erroneously held that the legislature could not lawfully require its grantee of the right to take water from a great pond for public purposes to make compensation for property injured thereby.   Upon this contention we have now no occasion to express or form any opinion as the question has not yet been presented.

Such being the settled law, it follows that the authority given to the Water District in its charter was not merely authority to exercise the power of eminent domain, authority to acquire by some condemnation proceedings the right to take water from the lake, but was authority to take directly and at once.   The grant, as to China Lake, was of authority to take public property not private property.   No proceedings by way of condemnation were necessary to vest in the grantee the right granted, and none were required.   Condemnation proceedings of public property or public rights already directly granted would be anomalous and superfluous.

Conceding, arguendo, that by the terms of its charter the Water District is made liable to plaintiff for all damages done its mill privilege and mill, nowhere in the charter do we find any stipulation that these damages must be paid, or even adjudicated, before the Water District begins to take water.   No authority is given the District to initiate proceedings for that purpose.   It is for the

persons or corporations "sustaining damage" to begin such proceedings. Sec. 3 of Charter.

In fine, it does not yet appear that the Water District is taking water from China Lake without right. Hence the injunction prayed for should not be ordered. Whether the district should pay the plaintiff for damages caused by such taking is another question to be determined in another proceeding.

*Bill dismissed with costs.*