AXEL SMEDBERG
IN BEHALF OF HIMSELF AND OTHERS
WHO MAY WISH TO JOIN AS PLAINTIFFS, IN EQUITY
*vs.*
MOXIE DAM COMPANY

Somerset.   Opinion, November 18, 1952.

*Jerome G. Daviau,* for complainants.

*Louis C. Stearns,*
*Louis C. Stearns, 3rd*
*Perkins, Weeks & Hutchins,* for defendants.

SITTING: MURCHIE, C. J., THAXTER, FELLOWS, NULTY, WILLIAMSON, JJ. MERRILL, J., did not sit.

WILLIAMSON, J.   On appeal.   This is a bill in equity by the owner of a hotel and sporting camps to enjoin the rais-

ing and lowering of the waters of Lake Moxie, a great pond, at certain seasons of the year by means of the defendant's dam at the outlet. Mr. Smedberg is the only plaintiff, although the bill was brought "in behalf of himself, and others similarly situated who may wish to join. . . ." After hearing on bill and demurrers, both general and special, the single justice entered a decree sustaining the demurrers and dismissing the bill from which the plaintiff appealed.

The issue is: Assuming the truth of the matters well pleaded, does the plaintiff in his bill set forth a cause entitling him to relief in equity?

The plaintiff's hotel and sporting camps are situated near but not touching the shore of Lake Moxie and near the defendant's dam. The plaintiff is not a shore or littoral owner. From a public landing the plaintiff rents boats. The business is operated for the accommodation of persons hunting and fishing in the region of Lake Moxie. There is nothing unusual about the plaintiff's business. It is a part of our great recreational industry.

Under a charter granted by the Legislature in 1911 the defendant was authorized to maintain dams at Lake Moxie "for the purpose of raising and storing a head of water for log driving purposes." *P. & S. L., 1911,* Chap. *155.* Here again there is nothing unusual about the charter.

The plaintiff does not object to the defendant carrying out its chartered purposes; that is, to the maintenance of the dam for log driving purposes. The burden of the complaint is: (1) That contrary to its charter the defendant has caused "the level of the water in Lake Moxie aforesaid to be fluctuated by sluicing out water not for the purpose of log driving or any other legitimate and lawful purpose, thus draining Lake Moxie to its extreme low level and then closing said gates and sluiceways so as to cause the level of water in Lake Moxie to be raised to its extreme high

level, which procedure the defendant has repeated, or caused to be repeated, at least once each year, and particularly in the fall of the year, and sometimes many times each year, contrary to its charter, and therefore, *ultra vires.*"; (2) that fishing in the lake has been seriously damaged in particular by destruction of the spawn; (3) that as a consequence fewer people are attracted to Lake Moxie with loss of revenue to the plaintiff; (4) that many others in business in the vicinity are similarly affected; (5) that the public landing has been rendered inaccessible and useless for the conduct of plaintiff's business of renting boats.

The plaintiff prays, in addition to a prayer for general relief, that the Dam Company may be "perpetually enjoined from fluctuating or changing the level of said Lake Moxie, unlawfully and contrary to its charter and contrary to the public policy of said State of Maine and contrary to the vested interests and property rights of the plaintiff and others similarly situated."

For purposes of the demurrers the defendant concedes, to quote the brief, "that all these very things which plaintiff now complains of have been going on to his detriment for twenty-five years." This condition will continue unless prevented by equity. Under these circumstances is a *legal interest* of the plaintiff threatened with harm or destruction? Has the plaintiff such an interest in the fishing and use of the public landing that equity may give the relief requested?

We start with the proposition that the State has full right to control and regulate the waters of Lake Moxie and the fishing therein. Full ownership and sovereignty over great ponds lies in the State. *American Woolen Co.* v. *Kennebec Water District,* 102 Me. 153, 66 A. 316; *Conant* v. *Jordan,* 107 Me. 227, 77 A. 938; *Opinion of Justices,* 118 Me. 503, 106 A. 865; *Brown* v. *DeNormandie,* 123 Me. 535, 124 A.

697. In *Fernald* v. *Knox Woolen Co.*, 82 Me. 48, 19 A. 93, a littoral owner obtained an injunction against drawing down the water of a lake by deepening the outlet. It was held that the waters of lakes may not be drawn down below natural level without legislative authority. The court said, at page 56: "As great ponds and lakes are public property, the state may undoubtedly control and regulate their use as it thinks proper." For purposes of the demurrers the plaintiff in substance has complained that the defendant is maintaining a public nuisance in controlling and regulating the waters of the lake in a manner not authorized by its charter.

Our problem may be considerably narrowed. First, we may assume that the defendant has violated, and, unless enjoined will continue to violate, its charter in its methods of control of the waters of Lake Moxie. The defendant for purposes of this case is maintaining and threatens to maintain a public nuisance. It goes without question that the public, that is the State, may insist that the defendant confine its activities within the grant of the Legislature. Second, it is unnecessary to consider what rights, if any, in fishing or a public landing may belong to owners of shore property on our great ponds. The plaintiff's hotel and camps are not on the shore. The plaintiff does not contend that he has gained ownership of any nature in shore property from the rental of boats at the public landing.

Two issues remain for consideration. First, does a sporting camp owner under the circumstances outlined suffer an injury different in kind from the injury to the public? May he have injunctive relief based upon a special, peculiar, distinct, and private injury from the maintenance of a public nuisance? Second, in view of the existence of the present situation for twenty-five years without complaint, is plaintiff barred by laches, or is his claim stale? Since the first issue must be answered in the negative, there will be no need of considering the defense of laches or staleness.

Justice Appleton, later Chief Justice, stated the rule clearly in *Brown* v. *Watson*, 47 Me. 161, at page 162, as follows:

> "The law is well settled, that no person can maintain an action for a common nuisance, unless he has suffered therefrom some special and peculiar damages other and greater than those sustained by the public generally."

The problem, as is so often the case, is not in ascertaining the law but in applying the accepted legal principle to the facts. We comment on a few of the many cases in our reports in which the court has been faced with a like question. In *Smart* v. *Lumber Co.*, 103 Me. 37, 68 A. 527, the plaintiff, a riparian owner of a summer cottage on a navigable or floatable stream, recovered against defendant engaged in driving logs for interference with plaintiff's right of access to his cottage. The ground of recovery was not that the plaintiff used the stream more than others, but that his use to reach his cottage differed from the use of the public. In the equity case of *Fernald* v. *Knox Woolen Co.*, *supra*, a littoral owner on a great pond secured an injunction against withdrawal of water below the natural level. The court said, at page 56:

> "And this natural water frontage may be as valuable to the land owner as the right to draw water is to the mill-owner. But whether of equal value or not, it is of equal validity in law, and entitled to equal protection."

Other cases of interest in which the private person has prevailed are: *Cole* v. *Sprowl*, 35 Me. 161 (building on highway) ; *Dudley* v. *Kennedy*, 63 Me. 465 (obstruction of river) ; *Franklin Wharf* v. *Portland*, 67 Me. 46 (damage to docks from maintenance of sewer) ; *Tuell* v. *Inhabitants of Marion*, 110 Me. 460, 86 A. 980 (obstruction to stream by bridge-increasing expense of log driving) ; *Yates* v. *Tiffiny*, 126 Me. 128, 136 A. 668 (obstruction to highway cutting off

right of access to private property) ; *Larson* v. *N. E. Tel. & Tel. Co.,* 141 Me. 326, 44 A. (2nd) 1 (obstruction of highway). See also *Lockwood Co.* v. *Lawrence,* 77 Me. 297, 52 A. R. 763 (leading case in equity on rights of riparian proprietors) ; 39 *Am. Jur.* 378, Sec. 124 et seq. "Nuisances"; *Joyce on Nuisances,* 1906 Ed., Sec. 430; 66 *C. J. S.* 831, Sec. 78 et seq. "Nuisances."

There must be an infringement of the plaintiff's private rights to permit recovery at law or relief in equity. In *Whitmore* v. *Brown,* 102 Me. 47, 65 A. 516, the owner of land at the seashore occupied for summer residential purposes was held to have no complaint in equity against the extension of a wharf or the maintenance of other structures on tide flats owned by the defendant in front of plaintiff's land. The court said, at page 59:

> "Though by reason of her land being on this cove the plaintiff may have more need or occasion than other persons to make use of the public right to the unimpeded navigation of the cove, and her land may be more damaged by the violation of that right, the right itself is still public and not private. Her ownership of land on the cove gives her no greater nor different right to navigate it. Every other citizen has the same right in kind and degree. The plaintiff may have a greater interest than others in the right and a greater need of its enforcement, but that does not change the public right into a private right. *Frost* v. *Wash. Co. R. R. Co.,* 96 Maine, 76. It may be that an individual actually obstructed by an unauthorized structure while in the actual exercise of the public right may maintain an action for damages resulting, as was held in *Brown* v. *Watson,* 47 Maine, 161; but that is a different case from this where the only complaint is of the unfavorable effect upon the enjoyment and value of the land."

In *Frost* v. *Wash. Co. R. R. Co.,* 96 Me. 76, 51 A. 806, the plaintiff sought unsuccessfully to recover damages by rea-

son of the building and maintenance of a trestle, lawfully erected and maintained, across a channel leading to a tide water cove whereby access was cut off from the plaintiff's store and mill to the high seas. The court held that the right of navigation of the plaintiff was neither his private property nor his private right. The damage which unquestionably the plaintiff suffered in loss of revenue and loss of value of his property was no more than *damnum absque injuria*. The trestle in this instance was lawfully erected and maintained and the case in this respect differs from the *Whitmore* case, *supra*, in which the structures proposed and existing were not lawful.

In *Water District* v. *Me. Turnpike Authority*, 145 Me. 35, at page 54, 71 A. (2nd) 520, 531 we read:

> "The only damage claimed by the plaintiff as we have heretofore shown was to its alleged right to use the water of Branch Brook as a source of supply for public distribution. This was a proprietary right which, although exercised by the District, the evidence before the referees did not show that it legally possessed. This does not constitute such special damage to the plaintiff as would entitle the plaintiff to recover, even if the acts of the defendant amounted to the creation or maintenance of a public nuisance."

In *Bouquet* v. *Hackensack Water Co.*, 90 N. J. L. 203, 101 A. 379, LRA 1917F 206, a riparian owner on a stream was denied recovery on a complaint that the acts of the defendant had made the stream less pleasant for boating. It was held that the private right was one of access and that boating was a public right. In *Kuehn* v. *Milwaukee*, 83 Wis. 583, 53 N. W. 912, 18 L. R. A. 553, a commercial fisherman sought an injunction against the city for disposal of garbage in the lake. It was held that the injury was to the public fishery and that the plaintiff had suffered no damage different in kind from the public. A different result was

reached by the Oregon court in *Columbia River Fishermen's P. U.* v. *City of St. Helens,* 160 Ore. 654, 87 P. (2nd) 195.

Other cases in which the result has been in favor of the defendant are: *Low* v. *Knowlton,* 26 Me. 128 (destruction of navigation) ; *Holmes* v. *Corthell,* 80 Me. 31, 12 A. 730 (obstruction of a way) ; *Foley, Malloy* v. *Farnham Co.,* 135 Me. 29, 188 A. 708 (trespassers), and *Taylor* v. *Street Ry.,* 91 Me. 193, 39 A. 560 (equity—no injunction by abutting owners against use of street by street railway).

Returning to the present case, what private right of the plaintiff will be violated by the continuance of the present method of control of the waters of Lake Moxie by the defendant?  The plaintiff could not properly object to the activities of the defendant if taken under the terms of its charter.  Fishing must give way to log driving, if the Legislature so permits.

No more could the plaintiff object to restrictions upon fishing in the lake.  The catch may be limited, and the season changed.  There is no need to discuss the broad powers of the State in the development and conservation of our inland fishing.  The right of the plaintiff in the fishing at Lake Moxie is neither greater nor less in our view than the right of the public generally.  Whatever affects the fishing, whether for good or for ill, in a legal sense equally touches all.

The plaintiff has chosen to engage in a business based upon the use of a resource held in trust by the State.  He does not thereby create for himself or for his customers a private right requiring or entitling him or them to any greater protection of fishing than belongs to every one of the public.  Loss in value from damage to the fishing is not peculiar to the plaintiff.  The private camps in the region doubtless are worth less for the same reason.  The guide, the storekeeper, and all business men whose livelihood depends in

any part upon the lure of fishing, suffer no less than the plaintiff. The injury to each is identical in kind.

The plaintiff, as the owner of sporting camps, can claim no right of fishing greater than the sum total of the rights of his prospective guests. It is the rights of this changing group of fishermen which in substance he says are threatened with destruction. If the individual fisherman cannot complain but must await and rely upon action by the State, then the group of fishermen have no greater *personal* grievance. If the group has no grievance, their representative, the plaintiff, can claim no violation of a legal right on their behalf, or on his own account, for he had no *personal right* not bound within the rights of the group.

"The true test seems to be whether the injury complained of is the violation of an individual right, or merely a hindrance to the plaintiff in the enjoyment of the public right." *David M. Swain & Son* v. *Chicago, B. & Q. R. Co.,* 252 Ill. 622, 97 N. E. 247, 38 L. R. A. N. S. 763, in which the *Smart* case, *supra,* is cited with approval.

We conclude that the complaint at best from the viewpoint of the plaintiff shows a hindrance only to the plaintiff and his guests, as individuals, in their enjoyment of a public right. Such a hindrance does not affect a private right of the plaintiff. His loss is *damnum absque injuria.*

The claim of damage for loss of business in renting boats at the public landing may be disposed of briefly. A public landing, as the name indicates, is a landing for use of the public in the transfer of persons and goods between land and water. The plaintiff can claim no greater rights than any other member of the public in the landing at Lake Moxie, and such rights do not include a license to use the landing as the site of a private business.

We may also point out that the plaintiff's real objection about the landing seems to be that the defendant did not

keep the lake above its natural level. There is nothing in the complaint to indicate any duty on the part of the defendant to maintain the water at any given level or in particular above the natural level. Surely the defendant was under no obligation because it owned a dam, to maintain the lake at such a level that the landing became accessible for the business venture of renting boats. Again the plaintiff must bear his loss without redress.

The vital complaint of the plaintiff is that defendant in its operation of the dam is destroying the great and valuable resource of fishing upon which the plaintiff in part has based his business. Should the waters be used to aid and improve the fishing or used for other economic and social purposes? The State has full power to regulate and control the fishing on Lake Moxie and the utilization of its waters. The State, and the State alone, on the facts set forth in this complaint has the right to complain against acts of the defendant which may constitute a public nuisance.

It is not enough that plaintiff has been damaged. He must show an infringement of private rights, and this he has failed to do.

*Appeal dismissed.*

*Decree below affirmed with costs.*