STATE OF MAINE                              SUPERIOR COURT
ANDROSCOGGIN, ss.                           CIVIL ACTION
                                            Docket No. AP-02-023
                                            EAG - AND - 6/12 2003

TIMOTHY ST. HILAIRE,
          Plaintiff

v.                                          **ORDER ON 80B APPEAL**

CITY OF AUBURN,
CITY OF AUBURN PLANNING BOARD
JIM'S AUTO SALES, INC.,                     DONALD L. GARBRECHT
JAMES LIMITED PARTNERSHIP,                  LAW LIBRARY
ROWE SPECIAL CREDIT, INC. et al.,                                    RECEIVED & FILED
          Defendants
                                            JUN 25 2003               JUN 12 2003

                                                                     ANDROSCOGGIN
                                                                     SUPERIOR COURT

## FINDINGS OF FACTS AND PROCEDURAL HISTORY

Clement St. Hilaire owns property at 1133 Center Street, Auburn, Maine. His property contains one of the few remaining houses within the general business district located on Route 4 in Auburn. Over the past decade, the area where his property is located has become less and less residential in nature. Mr. St. Hilaire's son, Timothy, allegedly lives in his father's house on Route 4. Clement St. Hilaire granted a "Power of Attorney" to his son, the appellant, to "'manage and control' the business and affairs with respect" to the property in question. *St. Hilaire v. City of Auburn*, AP-00-18 (Me. Super. Ct. And. Cty., Aug. 31, 2001) (Gorman, J.). St. Hilaire presumably appears before the court in this capacity.

In September of 2002, appellee James Pittman (Pittman), a shareholder in Jim's Auto Sales, requested a special permit and site plan approval from the City of Auburn to operate an automobile sales lot annex from an existing building. The lot and its building, already zoned for "general business," were located approximately 350 feet

north of Pittman's existing automotive dealership. Pittman intended to use the building and lot to display additional vehicles for sale and for office purposes. Pursuant to § 3.62(B)(2)(c) of the City's Zoning Ordinance (Ordinance), such a use required Planning Board approval as a special exception. (R.[1] 91.) A public hearing on Pittman's request was scheduled for October 8, 2002. On that date, David Galbraith, Auburn's City Planner, presented a report concerning the request. His report stated that, although he was supportive of the proposed use in concept, he wanted a number of modifications to be made "to bring the property into further conformance with the City's Ordinances." (R. 11.)

Timothy St. Hilaire attended the meeting on October 8, 2002, and objected to the special exception request for a number of reasons. He contended the site plan submitted by Pittman was insufficient, and that the expansion of Pittman's existing automotive business would create a nuisance from the emission of potential noise, light, and environmental pollution. (10/8/02 Trns. 10, 11. *See also* R. 23-4.) St. Hilaire also argued that Pittman's business would merely serve as a host to a second business, Rowe Special Credit. (10/8/02 Trns. 6, 8.)

In order to allow Pittman to make the modifications suggested, the Board tabled his request. It was reconsidered at the November 12, 2002 hearing. At that time, Galbraith explained that the applicant had corrected all of the problems associated with the request, and recommended that the request be granted. St. Hilaire spoke at this meeting also. At that time, he complained that the project would impact wetlands, asserted that Pittman had failed to provide a site plan, and complained that the site was

---

[1] The "record" was prepared by Timothy St. Hilaire. It does not include a complete copy of the City's Zoning Ordinance. In addition, it does not contain a transcript of the proceedings before the Planning Board. St. Hilaire prepared and submitted a separate transcript of the two hearings that is unintelligible at various places. However, there was no objection to the record or to the transcript by the appellees. For clarity's sake, the transcript will be referred to separately.

actually going to be used by Rowe Credit because there was a sign advertising that business at the property. (11/12/02 Trns. 4 – 6) At the conclusion of that hearing, the Planning Board voted unanimously to approve the special exception and site plan, subject to a number of conditions. (R. 52)

In a document dated December 16, 2002, St. Hilaire requested that the Board reconsider its decision. The Board denied that motion for reconsideration at its January 14, 2003 meeting. (R. 67.)

Also on December 16, 2002, St. Hilaire filed an appeal of the Board's decision, pursuant to M.R. Civ. P. 80B. He served copies of his complaint on the City of Auburn, Rowe Special Credit, Jim's Auto Sales, Inc, and James Limited Partnership. On January 9, 2003, St. Hilaire filed a motion for stay, requesting that Pittman be prevented from operating his business at the property in question. That motion was denied on February 3, 2003.

On January 31, 2003, St. Hilaire filed a motion demanding that Attorney John Conway be "removed" from representing the City of Auburn and Jim's Auto Sales, Inc. That motion was denied on February 27, 2003. On the same date, Attorney Conway filed a motion to withdraw from the representation of James Limited partnership because that entity had no interest in the property in question. St. Hilaire filed an objection to that motion. The motion was granted June 19, 2003.

St. Hilaire filed his brief on February 18, 2003. The City of Auburn and Jim's Auto Sales, Inc., filed their brief on March 25, 2003, and St. Hilaire filed a reply brief on April 7, 2003.[2] On June 3, 2003, St. Hilaire's appeal was argued.

---

[2] Neither of St. Hilaire's briefs complies with M.R. Civ. P. 7(f).

DISCUSSION

It is difficult, at best, to discern the legal arguments made by St. Hilaire in his briefs or at oral argument. For example, he stated, *verbatim*, "Whether adverse possession combined water district right of way easement of a non existing cordination [*sic*] of lots unknown to what has been acquired as in Latin '*specificatio*' the application never requested a variance applied 'existing lot'?" (App. Br. 2.) This statement, like the majority of the arguments submitted by St. Hilaire, is nonsensical.

The Superior Court reviews the decisions of municipal boards only for abuse of discretion, error of law, or findings unsupported by substantial evidence in the record. *York v. Town of Ogunquit*, 2001 ME 53, ¶ 6, 769 A.2d 172, 175. After a review of the record provided, the court is satisfied that St. Hilaire has failed to establish any basis for disturbing the Planning Board's decision.

1. Abuse of Discretion: Site Plan Approval

St. Hilaire has contended that the Board abused its discretion by approving the site plan submitted by Pittman. (App. Br. 8.) He argued that Pittman had no intention of completing the drainage requirement imposed by the Board, and that the site plan submitted by Pittman was a misrepresentation. *Id*. This argument is without merit.

Pittman's business is located in the "general business district," as defined by the City of Auburn's Ordinance (Ordinance). The Ordinance permits the Board to grant "special exceptions" to allow property owners to use their land for automobile and marine sales lots and service agencies. R. 85, 90-1. Ordinance § 7.2-1(A); R. 85-88. Only those special exception that are deemed to benefit public convenience and welfare will be granted. R. 85.

The Ordinance requires that all requests for special exceptions must undergo site plan review. Ordinance § 7.2(C); R. 86. Each applicant is required to file a completed

4

site plan showing, among other items, current zoning boundaries, 100-year flood plain boundaries, easements, rights-of-ways (existing, planned, or proposed), proposed location and direction of, and time of use of, outdoor lighting, and disposal of waste. (Ordinance § 7.1(D)(2)(d), (e), (p), (s); R. 79-81.) Within thirty days of the request, the Board must hold a public hearing announced through publication. Abutters receive notification of the hearing by mail. (Ordinance § 8.2(B); R. 88.)

In compliance with the Ordinance, Pittman submitted a site plan for review created by Technical Services, Inc., dated October 28, 1998. St. Hilaire and all other abutters received notification of both the original October 8, 2002 public hearing and the subsequent hearing on November 12, 2002. (R. 1, 42.[3])

After his proposal was tabled at the October meeting, the Board's staff reviewed Pittman's proposal extensively. (R. 20, 44, 45-47.) Pittman also submitted an updated site plan for review by the Board and its staff, dated October 16, 2002. Included in the Planning Board report for November 12, 2002 was the recommendation that Pittman be required to complete a drainage easement, proposed by the previous owner of the property, before final approval. (R. 47.) In addition, all lighting was to "be full cut off style fixtures and not have bulbs that protrude below the fixture mount and *shall not spill onto surrounding properties*." (R. 49) (emphasis added).

The staff concluded that the property was situated in the general business district, and that Pittman's proposed use was consistent with the present classification of the neighborhood. (R. 48.) Based upon its review of the site plan(s) submitted by Pittman, the staff found that the proposal would not detrimentally affect the neighborhood or the environment. *Id.* It recommended that the special exception be

---

[3] St. Hilaire contends he did not receive proper notice. This argument is without merit. Per the Ordinance, the notice must state the time, date, place, subject to be heard, and the party to be contacted

granted. At the November 12, 2002 public hearing, after reviewing the findings and recommendations of the staff, and after hearing from St. Hilaire and a neighbor, the Board voted to unanimously approve Pittman's requested special exception and site plan. (R. 52.)

Giving plain meaning to the language of the Ordinance, nothing on the record suggests that the Board abused its discretion when it granted a special exception to Pittman. The Board has the authority under the Ordinance to grant a special exception for automobile sales and service businesses at its discretion. After careful and extensive review, the Board chose to grant such an exception to Pittman. Contrary to St. Hilaire's contentions, the Board's findings are supported by substantial evidence in the record, and the court finds that the Board complied with the requirements of the Ordinance.

2. Abuse of Discretion: Potential Nuisance

St. Hilaire next argued that Pittman's property created a potential "nuisance." App. Br. 9. He asserted that the expansion of Pittman's business would create a nuisance by way of lights, noise, and chemical "run-off" from the neighboring automobile lot.[4] R. 23. A "private nuisance" is "a non-trespassory invasion of another's interest in the private use and enjoyment of land."[5] RESTATEMENT (SECOND) OF

---

for further information. Ordinance § 8.2(B); R. 88. St. Hilaire received adequate notice as an abutter for both meetings for which he was present. R. 1, 42.

[4] For example, St. Hilaire complained, *inter alia*, of automobile lights shining into his home, (the record reflects that *he* drove onto Pittman's property at night and turned his own headlights toward his father's house). However, he opposed the suggestion of any fences, walls, or other natural barriers, which would otherwise restrict his "light and view to the north." R. 23. St. Hilaire contended at the Board meeting that any change must come "from an alteration of the use" of the Pittman property. *Id*. He also fears vehicles from the lot "rolling down over the elevated proposed site then rolling into" his home. *Id*. St. Hilaire contends that Pittman has done nothing to control the nuisance of potential noises (caused by "outside pageing music, intercomes and phone bells [sic]"). *Id*.

[5] *Cf*. A "public nuisance," which is defined as:

(1) A public nuisance is an unreasonable interference with a right common to the general public.

6

TORTS § 821D.  *See, e.g., Kennebunk, Kennebunkport & Wells Water District v. Maine Turnpike Authority,* 145 Me. 35, 41, 45, 71 A.2d 520 (1950); *Sprague v. Sampson,* 120 Me. 353, 355-56, 114 A. 305 (1921).  The injury suffered must interfere with the landowner's comfort, quiet, and enjoyment of the land.  PROSSER ON TORTS (KEETON ED.) §§ 87-88, at 619, 627-29.  Although the nuisance perpetrated by the trespasser need only affect one individual, his actions in doing so must be "unreasonable."  PROSSER ON TORTS (KEETON ED.) § 87, at 619-20

The essence of a nuisance claim must be an *actual* injury suffered, not the mere threat of a *potential* nuisance.  *See* PROSSER ON TORTS (KEETON ED.) §§ 87-88, at 619, 627-29.  In fact, St. Hilaire acknowledged only a "potential for particularized injury."  App. Br. 4.  Nothing in the record indicates that St. Hilaire or anyone else has suffered injury from a private nuisance from Pittman's business or its expansion.  The court finds that the Board did not abuse its discretion when it granted a special exception to Pittman over St. Hilaire's nuisance objections.

3.  Abuse of Discretion: Rowe Special Credit

St. Hilaire also contended that the Board erred in granting a special exception to Pittman because Rowe Special Credit, not Jim's Auto Sales, would be the true occupier of the annexed property.  There is no evidence in the record to support St. Hilaire's

---

(2) Circumstances that may sustain a holding that an interference with a public right is unreasonable include the following:
    (a) Whether the conduct involves a significant interference with the public health, the public safety, the public peace, the public comfort or the public convenience, or
    (b) whether the conduct is proscribed by a statute, ordinance, or administrative regulation, or
    (c) whether the conduct is of a continuing nature or has produced a permanent or long-lasting effect, and, as the actor knows or has reason to know, has a significant effect upon the public right.

RESTATEMENT (SECOND) OF TORTS § 821B.  Ordinarily, only the State may take action against a public nuisance.  *See, e.g., Smedberg v. Moxie Dam Co.,* 148 Me. 302, 92 A.2d 606 (1952).  In some instances an

assertion that Rowe Special Credit will occupy the property in lieu of Pittman's business. This argument is without merit.

4. Abuse of Discretion: Refusal for Motion on Rehearing

Finally, St. Hilaire contended that the Board erred in refusing to hear his Motion for Rehearing on the special exception. App. Br. 15. On January 14, 2003, the Board considered St. Hilaire's request, however "[n]o member of the Board brought up the special exception for reconsideration." R. 67. This argument is also without merit.

ORDER

For the reasons stated above, the findings of the Auburn Planning Board are upheld. St. Hilaire's appeal denied.

The clerk is instructed to incorporate this order by reference in the docket for this case.

DATED: June 12, 2003

_____
Ellen A. Gorman
Justice, Maine Superior Court

---

individual may bring suit if he can demonstrate a special injury, "different in kind and degree from that suffered by the public at large." *Whitmore v. Brown*, 102 Me. 47, 58, 65 A. 516 (1906).

Date Filed _December 16, 2002_ _ANDROSCOGGIN_ Docket No. _AP-02-23_

County

(Justice Ellen A. Gorman, Assigned)

Action _80B APPEAL_

CITY OF AUBURN, MAINE, Planning Board
Defendant -
and
JIM'S AUTO SALES INCORPORATED
JAMES A. PITTMAN (President) and
SUZANNE PITTMAN (Vice President)
LARRY MOREAU, JAMES LIMITED PARTNERSHIP
VS and ROWE SPECIAL CREIT INC. - Parties-in-

TIMOTHY L. ST. HILAIRE
PO Box 3163
Auburn, ME 04212-3163

| Plaintiff's Attorney | Defendant's Attorney Interest |
|---|---|
| Pro Se | (City Aub., Jim's Auto |
| | John W. Conway, Esq. James Limited Partner.) |
| | LINNELL, CHOATE & WEBBER (1-10-03) |
| | PO BOX 190 |
| | AUBURN ME 04212-0190 |

| Date of Entry | |
|---|---|
| **2002** **Dec. 24:** | Received 12-16-02. Filing fee paid. ($100.00) Summary Sheet, filed. Appeal Pursuant to Maine Rules of Civil Proceudre Rule 80B, with attachment, filed. |
| " " | Received 12-18-02. Copy of correspondence, with attachments, mailed the Auburn Planning Board from the Plaintiff RE: motion for reconsideration, specific findings, request for Stay of Action and request for specific documents to be entered into evidence, filed. |
| " " | On 12-24-02. Notice and Briefing Schedule, 80B Appeal of Governmental Actions mailed Timothy L. St. Hilaire and City of Auburn, Planning Board on 12-24-02. (Plaintiff's Brief is due on or Before January 27, 2003.) |
| **2003** **Jan. 6:** | Received 1-3-03. U.S. Domestic Return Receipts (4) filed showing acceptance by Gina Klemanski on behalf of City of Auburn; by Christine Albert on behalf of Rowe Special Credit; by Tammy Orr on behalf of Jim's Auto Sales, Inc.; and by Janet Vogel on behalf of James Limited Partnership, c/o John W. Conway, Esq. on 12-17-02. |
| **Jan. 10:** | Received 1-9-03. Plaintiff's Motion for Stay, filed. |
| " " | Plaintiff's Motion for Continuance for Filing Briefs, filed. |
| " " | Affidavit of Timothy L. St. Hilaire, filed. |
| " " | Copy of correspondence to Auburn Planning Board, requesting transcript of hearings held, filed. |
| **Jan. 13:** | Received 1-10-03. Correspondence from John W. Conway, Esq. RE: Entering his appearance on behalf of Def. City of Auburn Maine Plainning Board, Jim's Auto Sales, Inc. an James Limited Partnership, filed. |